UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Case No. 3:08-cv-960 |
| v. | ) | JUDGE ECHOLS |
| | ) | MAGISTRATE JUDGE KNOWLES |
| MURPHY DEVELOPMENT, LLC, et al, | ) | |
| | ) | |
| Defendants | ) | |

## CONSENT ORDER

## I.  INTRODUCTION

**A.  Background**

1.      Plaintiff United States of America and Defendants Murphy Development, LLC; Westland

Development, LLC; Meadowcreek, LP; Miller Town, LP; Swiss Ridge, LP; 17th Street,

LP; Alta Vista, LP; Forest View, LP; Stonebridge, LP; Spring Branch, LLC; Delrose

Court, LP; River View Park, LP; Sutherland View Apartments, LP; Lyon's Den, LP;

Dunhill, LLC; Ashton View, LLC; West Vista Ridge, LLC; Cassell Ridge, LP; Cassell

View, LP; Sutherland Park, LP; Azalea Development, LLC; The Highlands Apartments,

LP; and Beason Well, LP agree to the terms and entry of this Consent Order, resolving

this action filed by Plaintiff United States.  (All defendants named in the preceding

sentence except for Azalea Development, LLC, shall be hereinafter referred to

collectively as the "Defendants.")

2.      This action is brought by the United States to enforce the provisions of Title VIII of the

Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42

U.S.C. §§ 3601-3619 (the "Fair Housing Act" or "FHA"), and Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181-12189 ("ADA"). Specifically, the United States' Complaint alleges that Defendants have engaged in a pattern or practice of discrimination against persons with disabilities and denied rights to a group of persons because of disability by failing to design and construct the following twenty-one (21) listed covered multifamily dwellings (hereinafter the "Subject Properties" or individually "Subject Property") with the features of accessible and adaptable design and construction required by subsections 804(f)(1), 804(f)(2) and 804(f)(3)(C) of the Fair Housing Act, 42 U.S.C. § 3604(f)(1), (2) & (3)(C), and in a manner required by the ADA, 42 U.S.C. § 12183(a)(1).

a.      **Subject Properties** (Name, City, State, Number of Covered Dwelling Units)

    i.      Meadowcreek Apartments, Goodlettsville, TN, 48 covered units[1]

    ii.     Miller Town Apartments, Clarksville, TN, 48 covered units[2]

    iii.    Swiss Ridge Apartments, Nashville, 44 covered units[3]

    iv.     17th Street Apartments, Springfield, TN, 48 covered units[4]

---

[1] Meadowcreek Apartments, located at 919 South Dickerson Road, Goodlettsville, TN, is an apartment complex and has 84 apartment units in nine two-story, non-elevator buildings, with 48 covered dwelling units.

[2] Miller Town Apartments, located at 395 Jack Miller Blvd, Clarksville, TN, is an apartment complex and has 96 apartment units in twelve two-story, non-elevator buildings with 48 covered dwelling units.

[3] Swiss Ridge Apartments, located at 455 Swiss Avenue, Nashville, TN, is an apartment complex and has 84 apartment units in four non-elevator buildings with 44 covered dwelling units.

[4] 17th Street Apartments, located at 2565 17th Avenue East, Springfield, TN, is an apartment complex and has 96 apartment units in six non-elevator buildings with 48 covered

2

     v.       Lake Side Apartments, Hermitage, TN, 60 covered units[5]

     vi.      Forest View Apartments, Mt. Juliet, TN, 74 covered units[6]

     vii.     Stonebridge Apartments, Columbia, TN, 32 covered units[7]

     viii.    Spring Branch Apartments, Madison, TN, 36 covered units[8]

     ix.      Swiss View Apartments, Nashville, TN, 16 covered units[9]

     x.       River View Park Apartments, Knoxville, TN, 32 covered units[10]

     xi.      Sutherland View Apartments, Knoxville, TN, 60 covered units[11]

---

dwelling units.

[5]Lake Side Apartments, located at 3940 Bell Road, Hermitage, TN, is an apartment complex and has 130 apartment units in six non-elevator buildings with 60 covered dwelling units.

[6]Forest View Apartments, located at 119 Belinda Parkway, Mt. Juliet, TN, is an apartment complex and has 130 apartment units in seven non-elevator buildings with 74 covered units.

[7]Stonebridge Apartments, located at 100 Stonebridge Way, Columbia, TN, is an apartment complex and has 64 apartment units in four non-elevator buildings with 32 covered units.

[8]Spring Branch Apartments, located at 1830 Spring Branch Drive, Madison, TN, is an apartment complex and has 80 apartment units in nine non-elevator buildings with 36 covered units.

[9]Swiss View Apartments, located at 499 Swiss Avenue, Nashville, TN, is an apartment complex and has 32 apartment units in two non-elevator buildings with 16 covered units.

[10]River View Park Apartments, located at 3219 River Maple Way, Knoxville, TN, is an apartment complex and has 96 apartment units in four non-elevator buildings with 32 covered units.

[11]Sutherland View Apartments, located at 3220 Atchley Ridge Way, Knoxville, TN, is an apartment complex and has 164 apartment units in seven non-elevator buildings with 60 covered units.

xii.    Lyon's Den Apartments, Knoxville, TN, 25  covered units[12]

xiii.   Dunhill Apartments, Knoxville, TN, 36 covered units[13]

xiv.    Ashton View Apartments, Morristown, TN, 42 covered units[14]

xv.     West Vista Ridge Apartments, Knoxville, TN, 28 covered units[15]

xvi.    Cassell Ridge Apartments, Knoxville, TN, 60 covered units[16]

xvii.   Cassell View Apartments, Knoxville, TN, 24 covered units[17]

xviii.  Sutherland Park Apartments, Knoxville, TN, 16 covered units[18]

xix.    White Oak Apartments, Jamestown, TN, 20 covered units[19]

---

[12]Lyon's Den Apartments, located at 3610 Lyon's Way in Knoxville, TN, is an apartment complex and has 74 apartment units in three non-elevator buildings with 26 covered units.

[13]Dunhill Apartments, located at 1036 Dunhill Way, Knoxville, TN, is an apartment complex and has 74 apartment units in seven non-elevator buildings with 36 covered units.

[14]Ashton View Apartments, located at 169 Barkley Landing Drive, Morristown, TN, is an apartment complex and has 74 apartment units in eight non-elevator buildings with 42 covered units.

[15]West Vista Ridge Apartments, located at 1201 Vista Ridge Way, Knoxville, TN, is an apartment complex and has 96 apartment units in seven non-elevator buildings with 48 covered units.

[16]Cassell Ridge Apartments, located at 1230 Cassell Valley Way, Knoxville, TN, is an apartment complex and has 144 apartment units in five non-elevator buildings with 60 covered units.

[17]Cassell View Apartments, located at 1111 Elk Hill Way, Knoxville, TN, is an apartment complex and has 72 apartment units in three non-elevator buildings with 24 covered units.

[18]Sutherland Park Apartments, located at 510 Vista Glen Way, Knoxville, TN, is an apartment complex and has 48 apartment units in two non-elevator buildings with 16 covered units.

[19]White Oak Apartments, located at 114 Holt Spur Drive, Jamestown, TN, is an apartment complex and has 40 apartment units in five non-elevator buildings with 20 covered units.

4

xx.     The Highlands Apartments, Chattanooga, TN, 24 covered units[20]

xxi.     Beason Well Apartments, Kingsport, TN, 36 covered units[21]

3.     The United States and Defendants agree that the Subject Properties are subject to the accessible design and construction requirements of the FHA, 42 U.S.C. §3604(f)(3)(C) and the ADA, 42 U.S.C. §12183(a)(1).

## B. Defendants

4.     Defendant Murphy Development, LLC is an active for-profit limited liability company incorporated in Tennessee with its principal office address listed as 6514 Deane Hill Drive, Knoxville, TN 37919. Additional addresses include 5401 Kingston Pike, Ste 340-1, Knoxville, TN 37919-5052; 813 S. Northshore Dr., Suite 105, Knoxville, TN 37919 and 4823 Old Kingston Pike, Suite 205, Knoxville, TN 37919-6473. Murphy Development, LLC is the developer for some of the Subject Properties, and as developer, was involved in the design and construction of those properties.

5.     Westland Development, LLC is an active for-profit limited liability company incorporated in Tennessee with its principal office address listed as 6514 Deane Hill Drive, Knoxville, TN 37919. Westland Development, LLC is the developer for some of the twenty-one Subject Properties, and as developer, was involved in the design and construction of those properties.

---

[20]The Highlands Apartments, located at 2001 S. Lyerly Street, Chattanooga, TN, is an apartment complex and has 48 apartment units in three non-elevator buildings with 24 covered units.

[21]Beason Well Apartments, located at 893 New Beason Well Road, Kingsport, TN, is an apartment complex and has 72 apartment units in four non-elevator buildings with 36 covered units.

6.      Meadow Creek, LP is an active limited partnership incorporated in Tennessee.  Addresses for Meadow Creek, LP include 4823 Old Kingston Pike, Ste. 205, Knoxville, TN 37919-6473 and 813 S. Northshore Dr., 105, Knoxville, TN 37919.  Meadow Creek, LP is the owner of Meadowcreek Apartments and was involved in the design and construction of Meadowcreek Apartments.

7.      Miller Town, LP is an active limited partnership incorporated in Tennessee.  Addresses for Miller Town, LP include 6514 Deane Hill Drive, Knoxville, TN 37919 and 813 S. Northshore Dr., 105, Knoxville, TN 37919.  Miller Town, LP is the owner of Miller Town Apartments and was involved in the design and construction of Miller Town Apartments.

8.      Swiss Ridge, LP is an active limited partnership, incorporated in Tennessee.  Addresses for Swiss Ridge, LP include 813 S. Northshore Dr., Ste. 105, Knoxville, TN 37919 and 4823 Old Kingston Pike, Ste. 205, Knoxville, TN 37919-6473.  Swiss Ridge, LP is the owner of Swiss Ridge Apartments and was involved in the design and construction of Swiss Ridge Apartments.

9.      17th Street, LP is an active limited partnership incorporated in Tennessee.  Addresses for 17th Street, LP include 6514 Deane Hill Drive, Knoxville, TN 37919; 4823 Old Kingston Pike, Ste. 205, Knoxville, TN 37919-6473; and 813 S. Northshore Dr., 105, Knoxville, TN 37919.  17th Street, LP is the owner of 17th Street Apartments and was involved in the design and construction of 17th Street Apartments.

10.     Alta Vista, LP is an active limited partnership incorporated in Tennessee.  Its principal office address is 4823 Old Kingston Pike, Ste. 205, Knoxville, TN 37919.  Additional addresses for Alta Vista, LP include 813 Northshore Drive, Suite 105, Knoxville, TN 37919 and 6514 Deane Hill Drive, Knoxville, TN 37919.  Alta Vista, LP is the owner of Lake Side

6

Apartments and was involved in the design and construction of Lake Side Apartments.

11.    Forest View, LP is an active limited partnership incorporated in Tennessee. Its principal office address is 4823 Old Kingston Pike, Suite 205, Knoxville, TN 37919. Forest View, LP is the owner of Forest View Apartments and was involved in the design and construction of Forest View Apartments.

12.    Stonebridge, LP is an active limited partnership incorporated in Tennessee. Addresses for Stonebridge, LP include 6514 Deane Hill Drive, Knoxville, TN 37919 and 4823 Old Kingston Pike, Ste. 205, Knoxville, TN 37919-6473. Stonebridge, LP is the owner of Stonebridge Apartments and was involved in the design and construction of Stonebridge Apartments.

13.    Spring Branch, LLC is an active for-profit limited liability company incorporated in Tennessee. The address for Spring Branch, LLC is 6514 Deane Hill Drive, Knoxville, TN 37919. Spring Branch, LLC is the owner of Spring Branch Apartments.

14.    Delrose Court, LP is an active limited partnership incorporated in Tennessee. The address for Delrose Court, LP is 4823 Old Kingston Pike, Ste. 205, Knoxville, TN 37919-6473. Delrose Court, LP is the owner of Swiss View Apartments and was involved in the design and construction of Swiss Ridge Apartments.

15.    River View Park, LP is an active limited partnership incorporated in Tennessee. The address for River View Park, LP is 4823 Old Kingston Pike, Ste. 205, Knoxville, TN 37919-6473. River View Park, LP is the owner of River View Park Apartments and was involved in the design and construction of River View Park Apartments.

16.    Sutherland View Apartments, LP is an active limited partnership incorporated in Tennessee. The address for Sutherland View Apartments, LP is 4823 Old Kingston Pike, Ste. 205,

7

Knoxville, TN 37919-6473. Sutherland View Apartments, LP is the owner of Sutherland View Apartments and was involved in the design and construction of Sutherland Park Apartments.

17.     Lyon's Den, LP is an active limited partnership incorporated in Tennessee. Addresses for Lyon's Den, LP include 4823 Old Kingston Pike, Ste. 205, Knoxville, TN 37919-6473, and 813 S. Northshore Dr., 105, Knoxville, TN 37919. Lyon's Den, LP is the owner of Lyon's Den Apartments and was involved in the design and construction of Lyon's Den Apartments.

18.     Dunhill, LLC is an active for-profit limited liability company incorporated in Tennessee. The address for Dunhill, LLC is 6514 Deane Hill Drive, Knoxville, TN 37919. Dunhill, LLC is the owner of Dunhill Apartments and was involved in the design and construction of Dunhill Apartments.

19.     Ashton View, LLC is an active for-profit limited liability company incorporated in Tennessee. The address for Ashton View, LLC is 6514 Deane Hill Drive, Knoxville, TN 37919. Ashton View, LLC is the owner of Ashton View Apartments and was involved in the design and construction of Ashton View Apartments.

20.     West Vista Ridge, LLC is an active for-profit limited liability company incorporated in Tennessee. Addresses for West Vista Ridge, LLC include 6514 Deane Hill Drive, Knoxville, TN 37919 and 813 S. Northshore Dr., 105, Knoxville, TN 37919. West Vista Ridge, LLC is the owner of West Vista Ridge Apartments and was involved in the design and construction of West Vista Ridge Apartments.

21.     Cassell Ridge, LP is an active limited partnership incorporated in Tennessee. Addresses for Cassell Ridge, LP include 6514 Deane Hill Drive, Knoxville, TN 37919; 4823 Old Kingston

Pike, Ste. 205, Knoxville, TN 37919-6473; and 813 S. Northshore Dr., 105, Knoxville, TN 37919.  Cassell Ridge, LP is the owner of Cassell Ridge Apartments and was involved in the design and construction of Cassell Ridge Apartments.

22. Cassell View, LP is an active limited partnership incorporated in Tennessee.  The address for Cassell View, LP is 4823 Old Kingston Pike, Ste. 205, Knoxville, TN 37919-6473.  Cassell View, LP is the owner of Cassell View Apartments and was involved in the design and construction of Cassell View Apartments.

23. Sutherland Park, LP is an active limited partnership incorporated in Tennessee.  Addresses for Sutherland Park, LP include 4823 Old Kingston Pike, Ste. 205, Knoxville, TN 37919-6473; and 813 S. Northshore Dr., 105, Knoxville, TN 37919.  Sutherland Park, LP is the owner of Sutherland Park Apartments and was involved in the design and construction of Sutherland Park Apartments.

24. Azalea Development, LLC is an active for-profit limited liability company incorporated in Tennessee.  The address for Azalea Development, LLC is 67 Irwin Avenue, Crossville, TN 38555.  Azalea Development, LLC is the owner of White Oak Apartments and was involved in the design and construction of White Oak Apartments.

25. The Highlands Apartments, LP is an active limited partnership incorporated in Tennessee.  The address for The Highlands Apartments, LP is 4823 Old Kingston Pike, Ste. 205, Knoxville, TN 37919-6473.  The Highlands Apartments, LP is the owner of The Highlands Apartments and was involved in the design and construction of The Highlands Apartments.

26. Beason Well, LP is an active limited partnership incorporated in Tennessee.  The address for Beason Well, LP is 4823 Old Kingston Pike, Ste. 205, Knoxville, TN 37919-6473.  Beason Well, LP is the owner of Beason Well Apartments and was involved in the design

9

and construction of Beason Well Apartments.

### C.    Relevant Requirements of the Fair Housing Act

27.    The FHA provides that, for non-elevator residential buildings with four or more dwelling units, all ground-floor units that are designed and constructed for first occupancy after March 13, 1991, are "covered multifamily dwellings" and must include certain basic features of accessible and adaptive design to make such units accessible to or adaptable for use by a person who has or develops a disability.  42 U.S.C. §§ 3604(f)(3)(C) and (f)(7)(B).

28.    The accessible and adaptive design provisions of the FHA require that for covered multifamily dwellings: (i) the public use and common use portions of such dwellings are readily accessible to and usable by persons with a disability; (ii) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by persons with a disability using wheelchairs; (iii) all premises within such dwellings contain the following features of adaptive design: (I) an accessible route into and through the dwelling; (II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations; (III) reinforcements in bathroom walls to allow later installation of grab bars; and (IV) usable kitchens and bathrooms such that an individual using a wheelchair can maneuver about the space.  42 U.S.C. § 3604(f)(3)(C).  These features are referred to herein as the "Accessible Design Requirements."

29.    The Subject Properties were designed and constructed for first occupancy after March 13, 1991, and therefore all of the units in buildings with elevators and the ground-floor units in non-elevator buildings at the Subject Properties are "covered multifamily dwellings" within the meaning of the FHA, 42 U.S.C. § 3604(f)(7)(A) and (B).  As such, those units and the public and common use areas at the Subject Properties must comply with the Accessible

10

Design Requirements of 42 U.S.C. § 3604(f)(3)(C).

**D.    Relevant Requirements of the Americans with Disabilities Act**

30.    The ADA and the ADA Standards for Accessible Design, ADA Accessibility Guidelines for

Buildings and Facilities, 28 C.F.R. pt. 36, app. A ("ADA Standards"), that have been issued

by the U.S. Department of Justice to implement the design and construction requirements of

Title III of the ADA also require that all "public accommodations" designed and constructed

for first occupancy after January 26, 1993, and the goods, services, facilities, privileges,

advantages, or accommodations of those public accommodations, be readily accessible to

and usable by persons with disabilities in accordance with certain accessibility standards

promulgated under that Act.  42 U.S.C. §§ 12182(a) and 12183(a)(1).  A rental or sales

office for an apartment complex is a "public accommodation" under the ADA.  42 U.S.C. §

12181(7)(E).

31.    The rental and sales offices for the Subject Properties were designed and constructed for

first occupancy after January 26, 1993, and therefore the rental and sales offices and the

facilities and privileges provided at those offices such as public parking are required to be

designed and constructed in accordance with the standards promulgated under the ADA.

**E.  Results of Inspections at Subject Properties Identifying Accessibility Barriers**

        **i.    Fully Surveyed Subject Properties**

32.    The United States has completed full inspections of Miller Town Apartments, Meadowcreek

Apartments, 17th Street Apartments, Lake Side Apartments, Forest View Apartments, Swiss

Ridge Apartments, Stonebridge Apartments, Spring Branch Apartments, Swiss View

Apartments, Ashton View Apartments, Dunhill Apartments, West Vista Ridge Apartments,

Cassell View Apartments, and White Oak Apartments (collectively, the "Fully Surveyed

11

Subject Properties") and has specifically identified alleged failures to meet the Accessible Design Requirements of the FHA and the ADA Standards at the each Fully Surveyed Subject Property. The investigation identified, in part, that at these Fully Surveyed Subject Properties there are routes from the parking area to building entrances with abrupt level changes in excess of 1/4 inch (steps and barrier curbs in certain instances), running slopes greater than 5% without ramp features, and cross slopes greater than 2%. There are buildings without accessible resident or visitor parking on an accessible route to covered dwelling units. Some of the properties lack an accessible route from the covered dwelling units to public and common use areas such as the clubhouse/leasing office or mail kiosk. The door hardware on entrances to some ground floor units are round knobs that require a tight grasping and twisting of the wrist to operate instead of compliant lever hardware. The head height on accessible routes is reduced to less than 80 inches by the unprotected undersides of stairs. There is insufficient latch-side pull-side maneuvering space for a person using a wheelchair to open doors at the restrooms and laundry rooms. There is insufficient latch-side pull-side maneuvering space for a person using a wheelchair to open the gates at the pools. Work surfaces in the laundry rooms and the tenant service desks are too high for use by a person using a wheelchair. Some doors to bathrooms, garages and walk-in-closets in apartments are not sufficiently wide for passage by a person using a wheelchair or other mobility aid. The thresholds at patio doors are not beveled at the interior to allow for the passage of a person using a wheelchair. Thermostat controls are mounted above the maximum reach of a person using a wheelchair. In some kitchens there is insufficient clear floor space between counters and the opposing walls or appliances for a person using a wheelchair. In "U" shaped kitchens, there is insufficient clear floor space for

12

a person using a wheelchair to turn or maneuver. In some bathrooms there is insufficient clear floor space adjacent to bathtubs and showers for a person using a wheelchair. Some toilets located in alcoves lack sufficient clear floor space for a person using a wheelchair.

ii. **Non-surveyed Subject Properties**

33. The United States has inspected the public and common use areas of Beason Well Apartments, Cassell Ridge Apartments, The Highlands Apartments, Lyon's Den Apartments, River View Park Apartments, Sutherland Park Apartments, and Sutherland View Apartments (collectively, the "Non-surveyed Subject Properties"), and has specifically identified alleged failures to meet the Accessible Design Requirements of the FHA and the ADA Standards at each Non-surveyed Subject Property. The investigation identified, in part, that at these Non-surveyed Subject Properties there are routes from the parking area to building entrances with abrupt level changes in excess of 1/4 inch (steps and barrier curbs in certain instances), running slopes greater than 5% without ramp features, and cross slopes greater than 2%. There are buildings without accessible resident or visitor parking on an accessible route to covered dwelling units. Some of the properties lack an accessible route from the covered dwelling units to public and common use areas such as the clubhouse/leasing office or mail kiosk. The door hardware on entrances to some ground floor units are round knobs that require a tight grasping and twisting of the wrist to operate instead of compliant lever hardware. The head height on accessible routes is reduced to less than 80 inches by the unprotected undersides of stairs.

34. The covered dwelling unit interiors of the Non-surveyed Subject Properties will be surveyed fully pursuant to this Consent Order to determine the extent to which the covered dwelling unit interiors of each Non-surveyed Property comply with the accessibility requirements of

13

the FHA and whether the public and common use areas of each Non-surveyed Subject

Property contain additional alleged violations of the FHA and ADA not yet identified.

**F.**     **Consent of the Parties to Entry of this Order**

35.     Defendants and Azalea Development, LLC, deny the allegations of the United States and

deny that they have violated the FHA or the ADA in any manner.  Defendants specifically

deny the United States' allegations regarding the number of units and number of covered

units as set forth in paragraph 2.a.  Defendants and Azalea Development, LLC, enter into

this Consent Order to avoid the costs of protracted litigation and nothing herein is or should

be construed as an admission of liability.

36.     The parties agree that this Court has jurisdiction over the subject matter of this case

pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 3614(a) and 12188(b)(1)(B).

The parties further agree that this controversy should be resolved without further

proceedings, without an evidentiary hearing or a trial, and without any finding on the merits

of the Complaint.

37.     The parties agree that this Consent Order applies only to the Defendants' and Azalea

Development, LLC's design and construction of the Subject Properties and Future Design

and Construction (Section XIII).  This Consent Order does not release Defendants or Azlaea

Development, LLC, from any claims, if any, by the United States concerning any other

covered multifamily dwellings not addressed herein, including other previously designed

and constructed dwellings.  Defendants and Azalea Development, LLC, hereby represent

that neither they, nor any entities in which any of them have a position of control as an

officer, director, member, or manager, or have a ten-percent (10%) or larger ownership

share, have built, designed, and/or constructed, in whole or in part, any covered multifamily

14

dwellings not otherwise identified as Subject Properties.

38.     As indicated by the signatures appearing below, the parties agree to the entry of this

Consent Order.

**It is hereby ORDERED, ADJUDGED, and DECREED**:

## II.  GENERAL INJUNCTION

39.     The Defendants and Azalea Development, LLC, and each of their officers, employees,

shareholders, agents, successors and assigns, and all other persons in active concert or

participation with them are enjoined from discriminating on the basis of disability as

prohibited by the Fair Housing Act, 42 U.S.C. §3604(f)(1)-(3) and the Americans with

Disabilities Act, 42 U.S.C. §§12182(a) and 12183(a)(1).

## III.  RETROFITS AT FULLY SURVEYED SUBJECT PROPERTIES

40.     The United States, as set forth herein and in its Complaint, alleges that the Subject

Properties do not meet the Accessible Design Requirements of the FHA and do not meet the

accessibility and adaptability requirements of the Fair Housing Accessibility Guidelines,

Design Guidelines for Accessible/Adaptable Dwelling, 56 Fed. Reg. 9472 (1991)

("Guidelines"); the ADA; and the ADA Standards.  Defendants and Azalea Development,

LLC, agree to take the actions and retrofits in accordance with the Remediation Protocol at

locations identified in the United States' Expert Reports and as described elsewhere in this

Consent Order to increase accessibility pursuant to the Fair Housing Act and, where

applicable, the ADA.  Defendants and Azalea Development, LLC, shall pay all expenses

associated with these retrofits.[22]

---

[22]  HUD regulations provide that "[a] public or common use area that complies with the
appropriate requirements of ANSI A117.1-1986 or a comparable standard is accessible."  See 24

15

**A. Meadowcreek Apartments**

    **i.       Access to Meadowcreek Apartments**

41.    Defendant Meadowcreek, LP, and any other Defendant with an ownership interest in

    Meadowcreek Apartments, agree to allow access to the public and common use areas of

    Meadowcreek Apartments and access to Meadowcreek unit interiors, for the purpose of

    planning, evaluating, and performing any retrofit required under this Consent Order, and for

    the purpose of interviewing or meeting with residents or tenants at Meadowcreek to aid in

    the implementation or completion of this Consent Order.

    **ii.      Retrofits to Public and Common Use Areas**

42.    Defendants Murphy Development, LLC and Meadowcreek, LP agree to take the corrective

    actions in accordance with the Remediation Protocol at locations identified in the United

    States' Expert Reports and other actions described below with regard to the public and

    common use areas of Meadowcreek Apartments to increase the property's compliance with

    the FHA, the Guidelines, the ADA, and the ADA Standards.

43.    As soon as reasonably possible, but by no later than fifteen (15) months from the entry of

    this Consent Order, Murphy Development, LLC and Meadowcreek, LP shall finish the

    retrofits to the public and common use areas of Meadowcreek Apartments in accordance

    with the Remediation Protocol at locations identified in the United States' Expert Reports.

    **iii.    Retrofits to Covered Multifamily Dwelling Unit Interiors**

44.    Defendants Murphy Development, LLC and Meadowcreek, LP agree to take the corrective

---

C.F.R. 100.201 (2002). HUD interprets "comparable standard" to mean a "standard that affords
[persons with disabilities] access essentially equivalent to or greater than that required by ANSI
A117.1." See 54 Fed. Reg. 3243 (Jan 23, 1989).

actions in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports and other actions described below to increase compliance with the FHA and the Guidelines in covered unit interiors at Meadowcreek Apartments.

45. As soon as reasonably possible, but by no later than three (3) years from the entry of this Consent Order, Murphy Development, LLC and Meadowcreek, LP shall finish all retrofits to the covered multifamily dwelling unit interiors at Meadowcreek Apartments in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports. Murphy Development, LLC and Meadowcreek, LP will retrofit the interior of a covered multifamily dwelling at Meadowcreek Apartments no later than the first time that unit becomes vacant following the entry of this Consent Order and before that unit is occupied by a new tenant or resident. Regardless of whether a vacancy arises for such retrofitting, however, Murphy Development, LLC and Meadowcreek, LP will complete such retrofitting no later than three (3) years from the entry of this Order.

46. Within thirty (30) days from the date of the entry of this Consent Order, Murphy Development, LLC, with any necessary assistance from Meadowcreek, LP, shall provide a notice that is substantially equivalent to Appendix A to Meadowcreek residents in covered multifamily dwelling units. The notice shall inform Meadowcreek residents that (1) to settle this lawsuit, Murphy Development, LLC and Meadowcreek, LP have agreed to perform certain retrofits to the ground-floor covered units; (2) the unit must be retrofitted within three (3) years; (3) the resident can schedule the retrofits; (4) the retrofits will be performed at no cost to the resident; and (5) temporary relocation expenses, or if temporary relocation is unavailable, a payment equivalent to the U.S. General Services Administration rate will be provided to the resident for temporary relocation expenses incurred by the resident, as

17

required by Section IV of this Order, <u>infra</u>.

47.     Meadowcreek residents may request the retrofits in writing, and the requests shall be granted by Murphy Development, LLC and Meadowcreek, LP on a first-come, first-served basis. Murphy Development, LLC and Meadowcreek, LP shall complete the retrofits as promptly as practical, but not later than forty-five (45) days from the date on which the retrofits were requested by a resident, with such deadline being subject to paragraph 45 of this Consent Order.

### B. Miller Town Apartments

#### i.       Access to Miller Town Apartments

48.     Defendant Miller Town, LP, and any other Defendant with an ownership interest in Miller Town Apartments, agree to allow access to the public and common use areas of Miller Town Apartments and access to Miller Town unit interiors, for the purpose of planning, evaluating, and performing any retrofit required under this Consent Order, and for the purpose of interviewing or meeting with residents or tenants at Miller Town to aid in the implementation or completion of this Consent Order.

#### ii.      Retrofits to Public and Common Use Areas

49.     Defendants Murphy Development, LLC and Miller Town, LP agree to take the corrective actions in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports and other actions described below with regard to the public and common use areas of Miller Town Apartments to increase the property's compliance with the FHA, the Guidelines, the ADA, and the ADA Standards.

50.     As soon as reasonably possible, but by no later than fifteen (15) months from the entry of this Consent Order, Murphy Development, LLC and Miller Town, LP shall finish the

retrofits to the public and common use areas of Miller Town Apartments in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports.

### iii. Retrofits to Covered Multifamily Dwelling Unit Interiors

51. Defendants Murphy Development, LLC and Miller Town, LP agree to take the corrective actions in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports and other actions described below to increase compliance with the FHA and the Guidelines in covered unit interiors at Miller Town Apartments.

52. As soon as reasonably possible, but by no later than three (3) years from the entry of this Consent Order, Murphy Development, LLC and Miller Town, LP shall finish all retrofits to the covered multifamily dwelling unit interiors at Miller Town Apartments in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports. Murphy Development, LLC and Miller Town, LP will retrofit the interior of a covered multifamily dwelling at Miller Town Apartments no later than the first time that unit becomes vacant following the entry of this Consent Order and before that unit is occupied by a new tenant or resident. Regardless of whether a vacancy arises for such retrofitting, however, Murphy Development, LLC and Miller Town, LP will complete such retrofitting no later than three (3) years from the entry of this Order.

53. Within thirty (30) days from the date of the entry of this Consent Order, Murphy Development, LLC, with any necessary assistance from Miller Town, LP, shall provide a notice that is substantially equivalent to Appendix A to Miller Town residents in covered multifamily dwelling units. The notice shall inform Miller Town residents that (1) to settle this lawsuit, Murphy Development, LLC and Miller Town, LP have agreed to perform certain retrofits to the ground-floor covered units; (2) the unit must be retrofitted within

19

three (3) years; (3) the resident can schedule the retrofits; (4) the retrofits will be performed at no cost to the resident; and (5) temporary relocation expenses, or if temporary relocation is unavailable, a payment equivalent to the U.S. General Services Administration rate will be provided to the resident for temporary relocation expenses incurred by the resident, as required by Section IV of this Order, infra.

54.     Miller Town residents may request the retrofits in writing, and the requests shall be granted by Murphy Development, LLC and Miller Town, LP on a first-come, first-served basis. Murphy Development, LLC and Miller Town, LP shall complete the retrofits as promptly as practical, but not later than forty-five (45) days from the date on which the retrofits were requested by a resident, with such deadline being subject to paragraph 52 of this Consent Order.

**C. Swiss Ridge Apartments**

   **i.      Access to Swiss Ridge Apartments**

55.     Defendant Swiss Ridge, LP, and any other Defendant with an ownership interest in Swiss Ridge Apartments, agree to allow access to the public and common use areas of Swiss Ridge Apartments and access to Swiss Ridge unit interiors, for the purpose of planning, evaluating, and performing any retrofit required under this Consent Order, and for the purpose of interviewing or meeting with residents or tenants at Swiss Ridge to aid in the implementation or completion of this Consent Order.

   **ii.     Retrofits to Public and Common Use Areas**

56.     Defendants Murphy Development, LLC and Swiss Ridge, LP agree to take the corrective actions in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports and other actions described below with regard to the public and

20

common use areas of Swiss Ridge Apartments to increase the property's compliance with the FHA, the Guidelines, the ADA, and the ADA Standards.

57. As soon as reasonably possible, but by no later than thirty (30) months from the entry of this Consent Order, Murphy Development, LLC and Swiss Ridge, LP shall finish the retrofits to the public and common use areas of Swiss Ridge Apartments in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports.

### iii. Retrofits to Covered Multifamily Dwelling Unit Interiors

58. Defendants Murphy Development, LLC and Swiss Ridge, LP agree to take the corrective actions in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports and other actions described below to increase compliance with the FHA and the Guidelines in covered unit interiors at Swiss Ridge Apartments.

59. As soon as reasonably possible, but by no later three (3) years from the entry of this Consent Order, Murphy Development, LLC and Swiss Ridge, LP shall finish all retrofits to the covered multifamily dwelling unit interiors at Swiss Ridge Apartments in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports. Murphy Development, LLC and Swiss Ridge, LP will retrofit the interior of a covered multifamily dwelling at Swiss Ridge Apartments no later than the first time that unit becomes vacant following the entry of this Consent Order and before that unit is occupied by a new tenant or resident. Regardless of whether a vacancy arises for such retrofitting, however, Murphy Development, LLC and Swiss Ridge, LP will complete such retrofitting no later than three (3) years from the entry of this Order.

60. Within thirty (30) days from the date of the entry of this Consent Order, Murphy Development, LLC, with any necessary assistance from Swiss Ridge, LP, shall provide a

notice that is substantially equivalent to Appendix A to Swiss Ridge residents in covered multifamily dwelling units. The notice shall inform Swiss Ridge residents that (1) to settle this lawsuit, Murphy Development, LLC and Swiss Ridge, LP have agreed to perform certain retrofits to the ground-floor covered units; (2) the unit must be retrofitted within three (3) years; (3) the resident can schedule the retrofits; (4) the retrofits will be performed at no cost to the resident; and (5) temporary relocation expenses, or if temporary relocation is unavailable, a payment equivalent to the U.S. General Services Administration rate will be provided to the resident for temporary relocation expenses incurred by the resident, as required by Section IV of this Order, <u>infra</u>.

61. Swiss Ridge residents may request the retrofits in writing, and the requests shall be granted by Murphy Development, LLC and Swiss Ridge, LP on a first-come, first-served basis. Murphy Development, LLC and Swiss Ridge, LP shall complete the retrofits as promptly as practical, but not later than forty-five (45) days from the date on which the retrofits were requested by a resident, with such deadline being subject to paragraph 59 of this Consent Order.

**D. 17th Street Apartments**

**i.    Access to 17th Street Apartments**

62. Defendant 17th Street, LP, and any other Defendant with an ownership interest in 17th Street Apartments, agree to allow access to the public and common use areas of 17th Street Apartments and access to 17th Street unit interiors, for the purpose of planning, evaluating, and performing any retrofit required under this Consent Order, and for the purpose of interviewing or meeting with residents or tenants at 17th Street to aid in the implementation or completion of this Consent Order.

22

### ii. Retrofits to Public and Common Use Areas

63. Defendants Murphy Development, LLC and 17th Street, LP agree to take the corrective actions in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports and other actions described below with regard to the public and common use areas of 17th Street Apartments to increase the property's compliance with the FHA, the Guidelines, the ADA, and the ADA Standards.

64. As soon as reasonably possible, but by no later than thirty (30) months from the entry of this Consent Order, Murphy Development, LLC and 17th Street, LP shall finish the retrofits to the public and common use areas of 17th Street Apartments in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports.

### iii. Retrofits to Covered Multifamily Dwelling Unit Interiors

65. Defendants Murphy Development, LLC and 17th Street, LP agree to take the corrective actions in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports and other actions described below to increase compliance with the FHA and the Guidelines in covered unit interiors at 17th Street Apartments.

66. As soon as reasonably possible, but by no later than three (3) years from the entry of this Consent Order, Murphy Development, LLC and 17th Street, LP shall finish all retrofits to the covered multifamily dwelling unit interiors at 17th Street Apartments in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports. Murphy Development, LLC and 17th Street, LP will retrofit the interior of a covered multifamily dwelling at 17th Street Apartments no later than the first time that unit becomes vacant following the entry of this Consent Order and before that unit is occupied by a new tenant or resident. Regardless of whether a vacancy arises for such retrofitting, however,

23

Murphy Development, LLC and 17th Street, LP will complete such retrofitting no later than three (3) years from the entry of this Order.

67.     Within thirty (30) days from the date of the entry of this Consent Order, Murphy Development, LLC, with any necessary assistance from 17th Street, LP, shall provide a notice that is substantially equivalent to Appendix A to 17th Street residents in covered multifamily dwelling units.  The notice shall inform 17th Street residents that (1) to settle this lawsuit, Murphy Development, LLC and 17th Street, LP have agreed to perform certain retrofits to the ground-floor covered units; (2) the unit must be retrofitted within three (3) years; (3) the resident can schedule the retrofits; (4) the retrofits will be performed at no cost to the resident; and (5) temporary relocation expenses, or if temporary relocation is unavailable, a payment equivalent to the U.S. General Services Administration rate will be provided to the resident for temporary relocation expenses incurred by the resident, as required by Section IV of this Order, <u>infra</u>.

68.     17th Street residents may request the retrofits in writing, and the requests shall be granted by Murphy Development, LLC and 17th Street, LP on a first-come, first-served basis. Murphy Development, LLC and 17th Street, LP shall complete the retrofits as promptly as practical, but not later than forty-five (45) days from the date on which the retrofits were requested by a resident, with such deadline being subject to paragraph 66 of this Consent Order.

**E.  Lake Side Apartments**

    **i.       Access to Lake Side Apartments**

69.     Defendant Alta Vista, LP, and any other Defendant with an ownership interest in Lake Side Apartments, agree to allow access to the public and common use areas of Lake Side

Apartments and access to Lake Side unit interiors, for the purpose of planning, evaluating, and performing any retrofit required under this Consent Order, and for the purpose of interviewing or meeting with residents or tenants at Lake Side to aid in the implementation or completion of this Consent Order.

### ii. Retrofits to Public and Common Use Areas

70. Defendants Murphy Development, LLC and Alta Vista, LP agree to take the corrective actions in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports and other actions described below with regard to the public and common use areas of Lake Side Apartments to increase the property's compliance with the FHA, the Guidelines, the ADA, and the ADA Standards.

71. As soon as reasonably possible, but by no later than thirty (30) months from the entry of this Consent Order, Murphy Development, LLC and Alta Vista, LP shall finish the retrofits to the public and common use areas of Lake Side Apartments in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports.

### iii. Retrofits to Covered Multifamily Dwelling Unit Interiors

72. Defendants Murphy Development, LLC and Alta Vista, LP agree to take the corrective actions in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports and other actions described below to increase compliance with the FHA and the Guidelines in covered unit interiors at Lake Side Apartments.

73. As soon as reasonably possible, but by no later than three (3) years from the entry of this Consent Order, Murphy Development, LLC and Alta Vista, LP shall finish all retrofits to the covered multifamily dwelling unit interiors at Lake Side Apartments in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports.

Murphy Development, LLC and Alta Vista, LP will retrofit the interior of a covered multifamily dwelling at Lake Side Apartments no later than the first time that unit becomes vacant following the entry of this Consent Order and before that unit is occupied by a new tenant or resident. Regardless of whether a vacancy arises for such retrofitting, however, Murphy Development, LLC and Alta Vista, LP will complete such retrofitting no later than three (3) years from the entry of this Order.

74. Within thirty (30) days from the date of the entry of this Consent Order, Murphy Development, LLC, with any necessary assistance from Alta Vista, LP, shall provide a notice that is substantially equivalent to Appendix A to Lake Side residents in covered multifamily dwelling units. The notice shall inform Lake Side residents that (1) to settle this lawsuit, Murphy Development, LLC and Alta Vista, LP have agreed to perform certain retrofits to the ground-floor covered units; (2) the unit must be retrofitted within three (3) years; (3) the resident can schedule the retrofits; (4) the retrofits will be performed at no cost to the resident; and (5) temporary relocation expenses, or if temporary relocation is unavailable, a payment equivalent to the U.S. General Services Administration rate will be provided to the resident for temporary relocation expenses incurred by the resident, as required by Section IV of this Order, infra.

75. Lake Side residents may request the retrofits in writing, and the requests shall be granted by Murphy Development, LLC and Alta Vista, LP on a first-come, first-served basis. Murphy Development, LLC and Alta Vista, LP shall complete the retrofits as promptly as practical, but not later than forty-five (45) days from the date on which the retrofits were requested by a resident, with such deadline being subject to paragraph 73 of this Consent Order.

**F. Forest View Apartments**

### i.     Access to Forest View Apartments

76.    Defendant Forest View, LP, and any other Defendant with an ownership interest in Forest View Apartments, agree to allow access to the public and common use areas of Forest View Apartments and access to Forest View unit interiors, for the purpose of planning, evaluating, and performing any retrofit required under this Consent Order, and for the purpose of interviewing or meeting with residents or tenants at Forest View to aid in the implementation or completion of this Consent Order.

### ii.     Retrofits to Public and Common Use Areas

77.    Defendants Murphy Development, LLC and Forest View, LP agree to take the corrective actions in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports and other actions described below with regard to the public and common use areas of Forest View Apartments to increase the property's compliance with the FHA, the Guidelines, the ADA, and the ADA Standards.

78.    As soon as reasonably possible, but by no later than thirty (30) months from the entry of this Consent Order, Murphy Development, LLC and Forest View, LP shall finish the retrofits to the public and common use areas of Forest View Apartments in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports.

### iii.     Retrofits to Covered Multifamily Dwelling Unit Interiors

79.    Defendants Murphy Development, LLC and Forest View, LP agree to take the corrective actions in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports and other actions described below to increase compliance with the FHA and the Guidelines in covered unit interiors at Forest View Apartments.

80.    As soon as reasonably possible, but by no later than three (3) years from the entry of this

27

Consent Order, Murphy Development, LLC and Forest View, LP shall finish all retrofits to the covered multifamily dwelling unit interiors at Forest View Apartments in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports. Murphy Development, LLC and Forest View, LP will retrofit the interior of a covered multifamily dwelling at Forest View Apartments no later than the first time that unit becomes vacant following the entry of this Consent Order and before that unit is occupied by a new tenant or resident. Regardless of whether a vacancy arises for such retrofitting, however, Murphy Development, LLC and Forest View, LP will complete such retrofitting no later than three (3) years from the entry of this Order.

81. Within thirty (30) days from the date of the entry of this Consent Order, Murphy Development, LLC, with any necessary assistance from Forest View, LP, shall provide a notice that is substantially equivalent to Appendix A to Forest View residents in covered multifamily dwelling units. The notice shall inform Forest View residents that (1) to settle this lawsuit, Murphy Development, LLC and Forest View, LP have agreed to perform certain retrofits to the ground-floor covered units; (2) the unit must be retrofitted within three (3) years; (3) the resident can schedule the retrofits; (4) the retrofits will be performed at no cost to the resident; and (5) temporary relocation expenses, or if temporary relocation is unavailable, a payment equivalent to the U.S. General Services Administration rate will be provided to the resident for temporary relocation expenses incurred by the resident, as required by Section IV of this Order, infra.

82. Forest View residents may request the retrofits in writing, and the requests shall be granted by Murphy Development, LLC and Forest View, LP on a first-come, first-served basis. Murphy Development, LLC and Forest View, LP shall complete the retrofits as promptly as

28

practical, but not later than forty-five (45) days from the date on which the retrofits were requested by a resident, with such deadline being subject to paragraph 80 of this Consent Order.

### G. Stonebridge Apartments

#### i. Access to Stonebridge Apartments

83. Defendant Stonebridge, LP, and any other Defendant with an ownership interest in Stonebridge Apartments, agree to allow access to the public and common use areas of Stonebridge Apartments and access to Stonebridge unit interiors, for the purpose of planning, evaluating, and performing any retrofit required under this Consent Order, and for the purpose of interviewing or meeting with residents or tenants at Stonebridge to aid in the implementation or completion of this Consent Order.

#### ii. Retrofits to Public and Common Use Areas

84. Defendants Murphy Development, LLC and Stonebridge, LP agree to take the corrective actions in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports and other actions described below with regard to the public and common use areas of Stonebridge Apartments to increase the property's compliance with the FHA, the Guidelines, the ADA, and the ADA Standards.

85. As soon as reasonably possible, but by no later than thirty (30) months from the entry of this Consent Order, Murphy Development, LLC and Stonebridge, LP shall finish the retrofits to the public and common use areas of Stonebridge Apartments in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports.

#### iii. Retrofits to Covered Multifamily Dwelling Unit Interiors

86. Defendants Murphy Development, LLC and Stonebridge, LP agree to take the corrective

29

actions in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports and other actions described below to increase compliance with the FHA and the Guidelines in covered unit interiors at Stonebridge Apartments.

87. As soon as reasonably possible, but by no later than three (3) years from the entry of this Consent Order, Murphy Development, LLC and Stonebridge, LP shall finish all retrofits to the covered multifamily dwelling unit interiors at Stonebridge Apartments in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports. Murphy Development, LLC and Stonebridge, LP will retrofit the interior of a covered multifamily dwelling at Stonebridge Apartments no later than the first time that unit becomes vacant following the entry of this Consent Order and before that unit is occupied by a new tenant or resident. Regardless of whether a vacancy arises for such retrofitting, however, Murphy Development, LLC and Stonebridge, LP will complete such retrofitting no later than three (3) years from the entry of this Order.

88. Within thirty (30) days from the date of the entry of this Consent Order, Murphy Development, LLC, with any necessary assistance from Stonebridge, LP, shall provide a notice that is substantially equivalent to Appendix A to Stonebridge residents in covered multifamily dwelling units. The notice shall inform Stonebridge residents that (1) to settle this lawsuit, Murphy Development, LLC and Stonebridge, LP have agreed to perform certain retrofits to the ground-floor covered units; (2) the unit must be retrofitted within three (3) years; (3) the resident can schedule the retrofits; (4) the retrofits will be performed at no cost to the resident; and (5) temporary relocation expenses, or if temporary relocation is unavailable, a payment equivalent to the U.S. General Services Administration rate will be provided to the resident for temporary relocation expenses incurred by the resident, as

30

required by Section IV of this Order, <u>infra</u>.

89.  Stonebridge residents may request the retrofits in writing, and the requests shall be granted by Murphy Development, LLC and Stonebridge, LP on a first-come, first-served basis. Murphy Development, LLC and Stonebridge, LP shall complete the retrofits as promptly as practical, but not later than forty-five (45) days from the date on which the retrofits were requested by a resident, with such deadline being subject to paragraph 87 of this Consent Order.

### H. Spring Branch Apartments

#### i. Access to Spring Branch Apartments

90.  Defendant Spring Branch, LLC, and any other Defendant with an ownership interest in Spring Branch Apartments, agree to allow access to the public and common use areas of Spring Branch Apartments and access to Spring Branch unit interiors, for the purpose of planning, evaluating, and performing any retrofit required under this Consent Order, and for the purpose of interviewing or meeting with residents or tenants at Spring Branch to aid in the implementation or completion of this Consent Order.

#### ii. Retrofits to Public and Common Use Areas

91.  Defendants Murphy Development, LLC and Spring Branch, LLC agree to take the corrective actions in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports and other actions described below with regard to the public and common use areas of Spring Branch Apartments to increase the property's compliance with the FHA, the Guidelines, the ADA, and the ADA Standards.

92.  As soon as reasonably possible, but by no later than fifteen (15) months from the entry of this Consent Order, Murphy Development, LLC and Spring Branch, LLC shall finish the

retrofits to the public and common use areas of Spring Branch Apartments in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports.

### iii.    Retrofits to Covered Multifamily Dwelling Unit Interiors

93.    Defendants Murphy Development, LLC and Spring Branch, LLC agree to take the corrective actions in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports and other actions described below to increase compliance with the FHA and the Guidelines in covered unit interiors at Spring Branch Apartments.

94.    As soon as reasonably possible, but by no later than three (3) years from the entry of this Consent Order, Murphy Development, LLC and Spring Branch, LLC shall finish all retrofits to the covered multifamily dwelling unit interiors at Spring Branch Apartments in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports.  Murphy Development, LLC and Spring Branch, LLC will retrofit the interior of a covered multifamily dwelling at Spring Branch Apartments no later than the first time that unit becomes vacant following the entry of this Consent Order and before that unit is occupied by a new tenant or resident.  Regardless of whether a vacancy arises for such retrofitting, however, Murphy Development, LLC and Spring Branch, LLC will complete such retrofitting no later than three (3) years from the entry of this Order.

95.    Within thirty (30) days from the date of the entry of this Consent Order, Murphy Development, LLC, with any necessary assistance from Spring Branch, LLC, shall provide a notice that is substantially equivalent to Appendix A to Spring Branch residents in covered multifamily dwelling units.  The notice shall inform Spring Branch residents that (1) to settle this lawsuit, Murphy Development, LLC and Spring Branch, LLC have agreed to perform certain retrofits to the ground-floor covered units; (2) the unit must be retrofitted

32

within three (3) years; (3) the resident can schedule the retrofits; (4) the retrofits will be performed at no cost to the resident; and (5) temporary relocation expenses, or if temporary relocation is unavailable, a payment equivalent to the U.S. General Services Administration rate will be provided to the resident for temporary relocation expenses incurred by the resident, as required by Section IV of this Order, _infra_.

96. Spring Branch residents may request the retrofits in writing, and the requests shall be granted by Murphy Development, LLC and Spring Branch, LLC on a first-come, first-served basis. Murphy Development, LLC and Spring Branch, LLC shall complete the retrofits as promptly as practical, but not later than forty-five (45) days from the date on which the retrofits were requested by a resident, with such deadline being subject to paragraph 94 of this Consent Order.

## I. Swiss View Apartments

### i. Access to Swiss View Apartments

97. Defendant Delrose Court, LP, and any other Defendant with an ownership interest in Swiss View Apartments, agree to allow access to the public and common use areas of Swiss View Apartments and access to Swiss View unit interiors, for the purpose of planning, evaluating, and performing any retrofit required under this Consent Order, and for the purpose of interviewing or meeting with residents or tenants at Swiss View to aid in the implementation or completion of this Consent Order.

### ii. Retrofits to Public and Common Use Areas

98. Defendants Murphy Development, LLC and Delrose Court, LP agree to take the corrective actions in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports and other actions described below with regard to the public and

33

common use areas of Swiss View Apartments to increase the property's compliance with the FHA, the Guidelines, the ADA, and the ADA Standards.

99. As soon as reasonably possible, but by no later than thirty (30) months from the entry of this Consent Order, Murphy Development, LLC and Delrose Court, LP shall finish the retrofits to the public and common use areas of Swiss View Apartments in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports.

### iii. Retrofits to Covered Multifamily Dwelling Unit Interiors

100. Defendants Murphy Development, LLC and Delrose Court, LP agree to take the corrective actions in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports and other actions described below to increase compliance with the FHA and the Guidelines in covered unit interiors at Swiss View Apartments.

101. As soon as reasonably possible, but by no later than three (3) years from the entry of this Consent Order, Murphy Development, LLC and Delrose Court, LP shall finish all retrofits to the covered multifamily dwelling unit interiors at Swiss View Apartments as listed in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports. Murphy Development, LLC and Delrose Court, LP will retrofit the interior of a covered multifamily dwelling at Swiss View Apartments no later than the first time that unit becomes vacant following the entry of this Consent Order and before that unit is occupied by a new tenant or resident. Regardless of whether a vacancy arises for such retrofitting, however, Murphy Development, LLC and Delrose Court, LP will complete such retrofitting no later than three (3) years from the entry of this Order.

102. Within thirty (30) days from the date of the entry of this Consent Order, Murphy Development, LLC, with any necessary assistance from Delrose Court, LP, shall provide a

34

notice that is substantially equivalent to Appendix A to Swiss View residents in covered multifamily dwelling units. The notice shall inform Swiss View residents that (1) to settle this lawsuit, Murphy Development, LLC and Delrose Court, LP have agreed to perform certain retrofits to the ground-floor covered units; (2) the unit must be retrofitted within three (3) years; (3) the resident can schedule the retrofits; (4) the retrofits will be performed at no cost to the resident; and (5) temporary relocation expenses, or if temporary relocation is unavailable, a payment equivalent to the U.S. General Services Administration rate will be provided to the resident for temporary relocation expenses incurred by the resident, as required by Section IV of this Order, infra.

103.    Swiss View residents may request the retrofits in writing, and the requests shall be granted by Murphy Development, LLC and Delrose Court, LP on a first-come, first-served basis. Murphy Development, LLC and Delrose Court, LP shall complete the retrofits as promptly as practical, but not later than forty-five (45) days from the date on which the retrofits were requested by a resident, with such deadline being subject to paragraph 101 of this Consent Order.

**J. Dunhill Apartments**

**i.    Access to Dunhill Apartments**

104.    Defendant Dunhill, LLC, and any other Defendant with an ownership interest in Dunhill Apartments, agree to allow access to the public and common use areas of Dunhill Apartments and access to Dunhill unit interiors, for the purpose of planning, evaluating, and performing any retrofit required under this Consent Order, and for the purpose of interviewing or meeting with residents or tenants at Dunhill to aid in the implementation or completion of this Consent Order.

35

### ii. Retrofits to Public and Common Use Areas

105. Defendants Murphy Development, LLC and Dunhill, LLC agree to take the corrective actions in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports and other actions described below with regard to the public and common use areas of Dunhill Apartments to increase the property's compliance with the FHA, the Guidelines, the ADA, and the ADA Standards.

106. As soon as reasonably possible, but by no later than fifteen (15) months from the entry of this Consent Order, Murphy Development, LLC and Dunhill, LLC shall finish the retrofits to the public and common use areas of Dunhill Apartments in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports.

### iii. Retrofits to Covered Multifamily Dwelling Unit Interiors

107. Defendants Murphy Development, LLC and Dunhill, LLC agree to take the corrective actions in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports and other actions described below to increase compliance with the FHA and the Guidelines in covered unit interiors at Dunhill Apartments.

108. As soon as reasonably possible, but by no later than three (3) years from the entry of this Consent Order, Murphy Development, LLC and Dunhill, LLC shall finish all retrofits to the covered multifamily dwelling unit interiors at Dunhill Apartments in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports. Murphy Development, LLC and Dunhill, LLC will retrofit the interior of a covered multifamily dwelling at Dunhill Apartments no later than the first time that unit becomes vacant following the entry of this Consent Order and before that unit is occupied by a new tenant or resident. Regardless of whether a vacancy arises for such retrofitting, however, Murphy

36

Development, LLC and Dunhill, LLC will complete such retrofitting no later than three (3) years from the entry of this Order.

109.    Within thirty (30) days from the date of the entry of this Consent Order, Murphy Development, LLC, with any necessary assistance from Dunhill, LLC, shall provide a notice that is substantially equivalent to Appendix A to Dunhill residents in covered multifamily dwelling units.  The notice shall inform Dunhill residents that (1) to settle this lawsuit, Murphy Development, LLC and Dunhill, LLC have agreed to perform certain retrofits to the ground-floor covered units; (2) the unit must be retrofitted within three (3) years; (3) the resident can schedule the retrofits; (4) the retrofits will be performed at no cost to the resident; and (5) temporary relocation expenses, or if temporary relocation is unavailable, a payment equivalent to the U.S. General Services Administration rate will be provided to the resident for temporary relocation expenses incurred by the resident, as required by Section IV of this Order, <u>infra</u>.

110.    Dunhill residents may request the retrofits in writing, and the requests shall be granted by Murphy Development, LLC and Dunhill, LLC on a first-come, first-served basis.  Murphy Development, LLC and Dunhill, LLC shall complete the retrofits as promptly as practical, but not later than forty-five (45) days from the date on which the retrofits were requested by a resident, with such deadline being subject to paragraph 108 of this Consent Order.

**K.  Ashton View Apartments**

      **i.     Access to Ashton View Apartments**

111.    Defendant Ashton View, LLC, and any other Defendant with an ownership interest in Ashton View Apartments, agree to allow access to the public and common use areas of Ashton View Apartments and access to Ashton View unit interiors, for the purpose of

37

planning, evaluating, and performing any retrofit required under this Consent Order, and for the purpose of interviewing or meeting with residents or tenants at Ashton View to aid in the implementation or completion of this Consent Order.

### ii. Retrofits to Public and Common Use Areas

112. Defendants Murphy Development, LLC and Ashton View, LLC agree to take the corrective actions in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports and other actions described below with regard to the public and common use areas of Ashton View Apartments to increase the property's compliance with the FHA, the Guidelines, the ADA, and the ADA Standards.

113. As soon as reasonably possible, but by no later than fifteen (15) months from the entry of this Consent Order, Murphy Development, LLC and Ashton View, LLC shall finish the retrofits to the public and common use areas of Ashton View Apartments in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports.

### iii. Retrofits to Covered Multifamily Dwelling Unit Interiors

114. Defendants Murphy Development, LLC and Ashton View, LLC agree to take the corrective actions in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports and other actions described below to increase compliance with the FHA and the Guidelines in covered unit interiors at Ashton View Apartments.

115. As soon as reasonably possible, but by no later than three (3) years from the entry of this Consent Order, Murphy Development, LLC and Ashton View, LLC shall finish all retrofits to the covered multifamily dwelling unit interiors at Ashton View Apartments in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports. Murphy Development, LLC and Ashton View, LLC will retrofit the interior of a covered

38

multifamily dwelling at Ashton View Apartments no later than the first time that unit becomes vacant following the entry of this Consent Order and before that unit is occupied by a new tenant or resident. Regardless of whether a vacancy arises for such retrofitting, however, Murphy Development, LLC and Ashton View, LLC will complete such retrofitting no later than three (3) years from the entry of this Order.

116. Within thirty (30) days from the date of the entry of this Consent Order, Murphy Development, LLC, with any necessary assistance from Ashton View, LLC, shall provide a notice that is substantially equivalent to Appendix A to Ashton View residents in covered multifamily dwelling units. The notice shall inform Ashton View residents that (1) to settle this lawsuit, Murphy Development, LLC and Ashton View, LLC have agreed to perform certain retrofits to the ground-floor covered units; (2) the unit must be retrofitted three (3) years; (3) the resident can schedule the retrofits; (4) the retrofits will be performed at no cost to the resident; and (5) temporary relocation expenses, or if temporary relocation is unavailable, a payment equivalent to the U.S. General Services Administration rate will be provided to the resident for temporary relocation expenses incurred by the resident, as required by Section IV of this Order, infra.

117. Ashton View residents may request the retrofits in writing, and the requests shall be granted by Murphy Development, LLC and Ashton View, LLC on a first-come, first-served basis. Murphy Development, LLC and Ashton View, LLC shall complete the retrofits as promptly as practical, but not later than forty-five (45) days from the date on which the retrofits were requested by a resident, with such deadline being subject to paragraph 115 of this Consent Order.

**L. West Vista Ridge Apartments**

### i. Access to West Vista Ridge Apartments

118. Defendant West Vista Ridge, LLC, and any other Defendant with an ownership interest in West Vista Ridge Apartments, agree to allow access to the public and common use areas of West Vista Ridge Apartments and access to West Vista Ridge unit interiors, for the purpose of planning, evaluating, and performing any retrofit required under this Consent Order, and for the purpose of interviewing or meeting with residents or tenants at West Vista Ridge to aid in the implementation or completion of this Consent Order.

### ii. Retrofits to Public and Common Use Areas

119. Defendants Murphy Development, LLC and West Vista Ridge, LLC agree to take the corrective actions in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports and other actions described below with regard to the public and common use areas of West Vista Ridge Apartments to increase the property's compliance with the FHA, the Guidelines, the ADA, and the ADA Standards.

120. As soon as reasonably possible, but by no later than fifteen (15) months from the entry of this Consent Order, Murphy Development, LLC and West Vista Ridge, LLC shall finish the retrofits to the public and common use areas of West Vista Ridge Apartments in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports.

### iii. Retrofits to Covered Multifamily Dwelling Unit Interiors

121. Defendants Murphy Development, LLC and West Vista Ridge, LLC agree to take the corrective actions in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports and other actions described below to increase compliance with the FHA and the Guidelines in covered unit interiors at West Vista Ridge Apartments.

122. As soon as reasonably possible, but by no later than three (3) years from the entry of this

Consent Order, Murphy Development, LLC and West Vista Ridge, LLC shall finish all retrofits to the covered multifamily dwelling unit interiors at West Vista Ridge Apartments in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports. Murphy Development, LLC and West Vista Ridge, LLC will retrofit the interior of a covered multifamily dwelling at West Vista Ridge Apartments no later than the first time that unit becomes vacant following the entry of this Consent Order and before that unit is occupied by a new tenant or resident. Regardless of whether a vacancy arises for such retrofitting, however, Murphy Development, LLC and West Vista Ridge, LLC will complete such retrofitting no later than three (3) years from the entry of this Order.

123.  Within thirty (30) days from the date of the entry of this Consent Order, Murphy Development, LLC, with any necessary assistance from West Vista Ridge, LLC, shall provide a notice that is substantially equivalent to Appendix A to West Vista Ridge residents in covered multifamily dwelling units. The notice shall inform West Vista Ridge residents that (1) to settle this lawsuit, Murphy Development, LLC and West Vista Ridge, LLC have agreed to perform certain retrofits to the ground-floor covered units; (2) the unit must be retrofitted within three (3) years; (3) the resident can schedule the retrofits; (4) the retrofits will be performed at no cost to the resident; and (5) temporary relocation expenses, or if temporary relocation is unavailable, a payment equivalent to the U.S. General Services Administration rate will be provided to the resident for temporary relocation expenses incurred by the resident, as required by Section IV of this Order, infra.

124.  West Vista Ridge residents may request the retrofits in writing, and the requests shall be granted by Murphy Development, LLC and West Vista Ridge, LLC on a first-come, first-served basis. Murphy Development, LLC and West Vista Ridge, LLC shall complete the

41

retrofits as promptly as practical, but not later than forty-five (45) days from the date on which the retrofits were requested by a resident, with such deadline being subject to paragraph 122 of this Consent Order.

## M. Cassell View Apartments

### i. Access to Cassell View Apartments

125. Defendant Cassell View, LP, and any other Defendant with an ownership interest in Cassell View Apartments, agree to allow access to the public and common use areas of Cassell View Apartments and access to Cassell View Apartments unit interiors, for the purpose of planning, evaluating, and performing any retrofit required under this Consent Order, and for the purpose of interviewing or meeting with residents or tenants at Cassell View Apartments to aid in the implementation or completion of this Consent Order.

### ii. Retrofits to Public and Common Use Areas

126. Defendants Murphy Development, LLC and Cassell View, LP, agree to take the corrective actions in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports and other actions described below with regard to the public and common use areas of Cassell View Apartments to increase the property's compliance with the FHA, the Guidelines, the ADA, and the ADA Standards.

127. As soon as reasonably possible, but by no later than thirty (30) months from the entry of this Consent Order, Murphy Development, LLC and Cassell View, LP, shall finish the retrofits to the public and common use areas of Cassell View Apartments in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports.

### iii. Retrofits to Covered Multifamily Dwelling Unit Interiors

128. Defendants Murphy Development, LLC and Cassell View, LP, agree to take the corrective

42

actions in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports and other actions described below to increase compliance with the FHA and the Guidelines in covered unit interiors at Cassell View Apartments.

129. As soon as reasonably possible, but by no later than three (3) years from the entry of this Consent Order, Murphy Development, LLC and Cassell View, LP, shall finish all retrofits to the covered multifamily dwelling unit interiors at Cassell View Apartments in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports. Murphy Development, LLC and Cassell View, LP, will retrofit the interior of a covered multifamily dwelling at Cassell View Apartments no later than the first time that unit becomes vacant following the entry of this Consent Order and before that unit is occupied by a new tenant or resident. Regardless of whether a vacancy arises for such retrofitting, however, Murphy Development, LLCand Cassell View, LP, will complete such retrofitting no later than three (3) years from the entry of this Order.

130. Within thirty (30) days from the date of the entry of this Consent Order, Murphy Development, LLC, with any necessary assistance from Cassell View, LP, shall provide a notice that is substantially equivalent to Appendix A to Cassell View Apartments residents in covered multifamily dwelling units. The notice shall inform Cassell View Apartments residents that (1) to settle this lawsuit, Murphy Development, LLC and Cassell View, LP, have agreed to perform certain retrofits to the ground-floor covered units; (2) the unit must be retrofitted within three (3) years; (3) the resident can schedule the retrofits; (4) the retrofits will be performed at no cost to the resident; and (5) temporary relocation expenses, or if temporary relocation is unavailable, a payment equivalent to the U.S. General Services Administration rate will be provided to the resident for temporary relocation expenses

43

incurred by the resident, as required by Section IV of this Order, <u>infra</u>.

131. Cassell View Apartments residents may request the retrofits in writing, and the requests shall be granted by Murphy Development, LLC and Cassell View, LP, on a first-come, first-served basis. Murphy Development, LLC and Cassell View, LP, shall complete the retrofits as promptly as practical, but not later than forty-five (45) days from the date on which the retrofits were requested by a resident, with such deadline being subject to paragraph 129 of this Consent Order.

**N. White Oak Apartments**

      **i.     Access to White Oak Apartments**

132. Defendant Azalea Development, LLC, and any other Defendant with an ownership interest in White Oak Apartments, agrees to allow access to the public and common use areas of White Oak Apartments and access to White Oak Apartments unit interiors, for the purpose of planning, evaluating, and performing any retrofit required under this Consent Order, and for the purpose of interviewing or meeting with residents or tenants at White Oak Apartments to aid in the implementation or completion of this Consent Order.

      **ii.     Retrofits to Public and Common Use Areas**

133. Defendant Azalea Development, LLC, agrees to take the corrective actions in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports and other actions described below with regard to the public and common use areas of White Oak Apartments to increase the property's compliance with the FHA, the Guidelines, the ADA, and the ADA Standards.

134. As soon as reasonably possible, but by no later than thirty (30) months from the entry of this Consent Order, Azalea Development, LLC, shall finish the retrofits to the public and

common use areas of White Oak Apartments in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports.

### iii.  Retrofits to Covered Multifamily Dwelling Unit Interiors

135.  Defendant Azalea Development, LLC, agrees to take the corrective actions in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports and other actions described below to increase compliance with the FHA and the Guidelines in covered unit interiors at White Oak Apartments.

136.  As soon as reasonably possible, but by no later than three (3) years from the entry of this Consent Order, Azalea Development, LLC, shall finish all retrofits to the covered multifamily dwelling unit interiors at White Oak Apartments in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports.  Azalea Development, LLC, will retrofit the interior of a covered multifamily dwelling at White Oak Apartments no later than the first time that unit becomes vacant following the entry of this Consent Order and before that unit is occupied by a new tenant or resident.  Regardless of whether a vacancy arises for such retrofitting, however, Azalea Development, LLC, will complete such retrofitting no later than three (3) years from the entry of this Order.

137.  Within thirty (30) days from the date of the entry of this Consent Order, Azalea Development, LLC, shall provide a notice that is substantially equivalent to Appendix A to White Oak Apartments residents in covered multifamily dwelling units.  The notice shall inform White Oak Apartments residents that (1) to settle this lawsuit, Azalea Development, LLC, has agreed to perform certain retrofits to the ground-floor covered units; (2) the unit must be retrofitted within three (3) years; (3) the resident can schedule the retrofits; (4) the retrofits will be performed at no cost to the resident; and (5) temporary relocation expenses,

45

or if temporary relocation is unavailable, a payment equivalent to the U.S. General Services Administration rate will be provided to the resident for temporary relocation expenses incurred by the resident, as required by Section IV of this Order, <u>infra</u>.

138.    White Oak Apartments residents may request the retrofits in writing, and the requests shall be granted by Azalea Development, LLC, on a first-come, first-served basis.  Azalea Development, LLC, shall complete the retrofits as promptly as practical, but not later than forty-five (45) days from the date on which the retrofits were requested by a resident, with such deadline being subject to paragraph 136 of this Consent Order.

139.    In addition to the Fully Surveyed Subject Properties whose public and common use areas must be retrofitted within fifteen (15) months from the date of the entry of this Consent Order as indicated above (namely, Ashton View Apartments, Dunhill Apartments, Spring Branch Apartments, West Vista Ridge Apartments, Meadowcreek Apartments, and Miller Town Apartments), Defendant Murphy Development, LLC, shall finish retrofits to the public and common use areas in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports at an additional four Subject Properties within fifteen (15) months from the date of the entry of this Consent Order.  Defendant Murphy Development, LLC, shall identify, in writing, to the United States these additional four Subject Properties within ten (10) days of the date of the entry of this Consent Order.

## IV.  INCONVENIENCE AND OVERNIGHT STAYS FOR RETROFITTING COVERED MULTIFAMILY DWELLING UNIT INTERIORS AT FULLY SURVEYED SUBJECT PROPERTIES

140.    The Defendants shall endeavor to minimize inconvenience to residents in scheduling and performing retrofits required by this Consent Order to covered multifamily dwelling unit interiors at the Subject Properties.

46

141. The Defendants involved in the design and construction of a Subject Property at which a resident of a unit scheduled to undergo a retrofit will be dislocated from the unit for more than twenty-four (24) hours consecutively shall pay the resident the applicable government per diem rate for food and lodging for the local area (as available at www.gsa.gov – click on "per diem rates" under travel) for each day of undue inconvenience or hardship for the resident(s). Such payment shall be made prior to the commencement of any retrofit work on the resident's unit, so that the resident may use the money to obtain alternative living accommodations and obtain food while dislocated.

## V. NOTICE OF RETROFITS TO PUBLIC AND COMMON USE AREAS AT FULLY SURVEYED SUBJECT PROPERTIES

142. Within thirty (30) days of the entry of this Consent Order, the Defendants shall provide written notice to all residents and owners at the Fully Surveyed Subject Properties stating that the retrofits required by this Consent Order will be performed to the public and common use areas of the Subject Properties, which include unit entrances and accessible routes. Such notice shall conform to Appendix C. The Defendants shall certify to the United States in writing that the notices have been distributed and the manner in which they were distributed within ten (10) days after such distribution.

## VI. SURVEYING OF NON-SURVEYED SUBJECT PROPERTIES

143. The United States has not completed inspections of the Non-surveyed Subject Properties as identified in Section I.E.ii.

144. The Defendants agree to take the following actions with regard to the surveying of the Non-surveyed Subject Properties:

   a.     Within sixty (60) days of the entry of the Order, the Defendants shall contract with

47

one or more qualified professionals, hereinafter the "Properties Surveyors," approved by the United States, to conduct an on-site survey in accordance with this Section, and specifically the next paragraph, at each of the Non-surveyed Subject Properties to identify alleged violations, if any, of the Fair Housing Act, and, where applicable, the ADA.[23] The Properties Surveyors will have expertise in the Accessible Design Requirements of the FHA and the accessibility requirements of the Guidelines, the ADA, and the ADA Standards.

b.     All surveys are to be completed within six (6) months of the date of the entry of this Consent Order.

c.     The surveys are to be conducted in accord with a written protocol separately agreed to by the Defendants and the United States, which shall be provided to the Properties Surveyor(s).

145.   The Properties Surveyor(s) will prepare a written Property Survey Report for each Non-surveyed Subject Property. Each Property Survey Report will comply with the following provisions.

a.     The Property Survey Report will specify the scope and methodology of the survey.

b.     The Property Survey Report will set forth each alleged violation observed during the on-site survey of the Accessible Design Requirements of the FHA, and of the accessibility requirements of the Guidelines; the ADA; and the ADA Standards.[24]

---

[23] The Defendants shall give the United States written notice of the survey at least twenty-one (21) days prior to each survey and shall give the United States an opportunity to have its representatives present for each survey.

[24] Should the Properties Surveyors elect to follow a standard other than ANSI A117.1-1986 for surveying the accessibility of the public and common-use areas, such surveyor will

48

c.      The Properties Surveyors will take digital photographs of the measurements taken to determine compliance with the accessibility and adaptability standards of the FHA; the Guidelines; the ADA; and the ADA Standards.  These photographs shall be printed and made a part of each Property Survey Report and made available in electronic digital form as an appendix to the Property Survey Report.

d.      The Property Survey Report will set forth whether the design or construction of any and all alleged violations observed during the on-site survey at the Non-surveyed Subject Property is compliant with the Accessible Design Requirements of the FHA and the accessibility requirements of the Guidelines, the ADA, the ADA Standards, and ANSI A117.1-1986 or a "comparable standard" based on the Properties Surveyor's review of the planning documents.

e.      The Properties Surveyor will send the Property Survey Report of each Non-surveyed Subject Property to counsel for the United States and the Defendants as soon as practical following each survey, but in any event no later than sixty (60) days after the date of the survey.

## VII.  RETROFITS AT NON-SURVEYED SUBJECT PROPERTIES

For each Non-surveyed Subject Property at which a Properties Surveyor has identified one or more alleged violations pursuant to Section VI, above, the provisions in Sections VII, VIII, IX, X, XI, and XII shall apply.

### i.      Access to Non-surveyed Subject Properties

---

inform the United States in writing of the standard to which the survey will be performed.  Such standard must provide access that is "essentially equivalent" to or "greater" than ANSI A117.1-1986 and must be approved by the United States prior to any surveying.

146.    Where a Non-surveyed Subject Property is owned by a Defendant or an entity related or affiliated to a Defendant, the Defendants agree to allow access to the public and common use areas of the Non-surveyed Subject Property and access to the Non-surveyed Subject Property covered multifamily dwelling unit interiors, for the purpose of performing any retrofitting required under this Consent Order, and for the purpose of interviewing or meeting with residents at an Non-surveyed Subject Property to aid in the implementation or completion of this Consent Order.

147.    Where a Non-surveyed Subject Property is not owned by a Defendant or an entity related or affiliated to a Defendant, the Defendants shall use good faith efforts to obtain consent to access to the public and common use areas of the Non-surveyed Subject Property and access to the Non-surveyed Subject Property covered multifamily dwelling unit interiors, for the purpose of performing any retrofitting required under this Consent Order, and for the purpose of interviewing or meeting with residents at an Non-surveyed Subject Property to aid in the implementation or completion of this Consent Order.

ii.    **Agreement on Retrofits at Non-surveyed Subject Properties**

148.    For each alleged violation set forth in a Property Survey Report, the United States and the Defendants shall have ninety (90) days from receipt of the Property Survey Report to reach agreement on the retrofits to be made by the Defendants.  The retrofits shall be made in accordance with the Remediation Protocol and made at locations identified in the Non-Surveyed Property's Property Surveyor Report.

149.    If the United States and the Defendants cannot reach agreement on the retrofits to be performed at any Non-surveyed Subject Property in accordance with the Remediation Protocol and made at locations identified in the Non-Surveyed Property's Property Surveyor

50

Report, nothing shall prevent the United States from seeking retrofits in accordance with the Accessible Design Requirements of the FHA, and the accessibility requirements of the Guidelines; the ADA; and the ADA Standards, if applicable.

### iii. Retrofits to Public and Common Use Areas of Non-surveyed Subject Properties

150. As soon as reasonably possible, but by no later than thirty (30) months, whichever is sooner, from date of the agreement or order on retrofits to public and common use areas at each Non-surveyed Subject Property, the Defendants shall finish the agreed or ordered retrofits of the public and common use area of that Non-surveyed Subject Property.

### iv. Retrofits to Covered Multifamily Dwelling Unit Interiors at Non-surveyed Subject Properties

151. As soon as reasonably possible, but by no later than three (3) years, whichever is sooner, from the date of the agreement or order on retrofits to covered multifamily dwelling unit interiors of a Non-surveyed Subject Property, the Defendants shall finish all agreed or ordered retrofits to the covered multifamily dwelling unit interiors at the Non-surveyed Subject Property. The Defendants will retrofit the interior of a covered multifamily dwelling at the Non-surveyed Subject Properties no later than the first time that unit becomes vacant following the beginning of this three (3) year period and before that unit is occupied by a new tenant or resident. Regardless of whether a vacancy arises for such retrofitting, however, Defendants will complete such retrofitting no later than the three (3) year period.

152. Within thirty (30) days from the date of the agreement or order on retrofits to covered multifamily dwelling unit interiors at the Non-surveyed Subject Property, the Defendants shall provide a notice that is substantially equivalent to Appendix A to the residents in

51

covered multifamily dwelling units at the Non-surveyed Subject Property. The notice shall inform Non-surveyed Subject Property residents that (1) to settle this lawsuit, Defendants have agreed to perform certain retrofits to the ground-floor covered units; (2) the unit must be retrofitted within three (3) years; (3) the resident can schedule the retrofits; (4) the retrofits will be performed at no cost to the resident; and (5) temporary relocation expenses, or if temporary relocation is unavailable, a payment equivalent to the U.S. General Services Administration rate will be provided to the resident for temporary relocation expenses incurred by the resident, as required by Section VIII of this Order, infra.

153. Non-surveyed Subject Property residents may request retrofits in writing, and the requests shall be granted by the Defendants on a first-come, first-served basis. The Defendants shall complete the retrofits as promptly as practical, but not later than forty-five (45) days from the date on which the retrofits were requested by a resident, with such deadline being subject to paragraph 151 of this Consent Order.

## VIII. INCONVENIENCE AND OVERNIGHT STAYS FOR RETROFITTING COVERED MULTIFAMILY DWELLING UNIT INTERIORS AT NON-SURVEYED SUBJECT PROPERTIES

154. The Defendants shall endeavor to minimize inconvenience to residents in scheduling and performing retrofits required by this Consent Order to covered multifamily dwelling unit interiors at the Non-surveyed Subject Properties.

155. If a resident at a Non-surveyed Subject Property scheduled to undergo a retrofit will be dislocated from the unit for more than twenty-four (24) hours consecutively, the Defendants involved in the design and construction of a Non-surveyed Subject Property shall pay the resident the applicable government per diem rate for food and lodging for the local area (as available at www.gsa.gov – click on "per diem rates" under travel) for each day of undue

52

inconvenience or hardship for the resident(s). Such payment shall be made prior to the commencement of any retrofit work on the resident's unit, so that the resident or owner may use the money to obtain alternative living accommodations and obtain food while dislocated.

## IX. NOTICE OF RETROFITS TO PUBLIC AND COMMON USE AREAS AT NON-SURVEYED SUBJECT PROPERTIES

156. Within thirty (30) days of the date of the agreement or order on retrofits at each Non-surveyed Subject Property, the Defendants shall provide written notice to all residents at such Non-surveyed Subject Property stating that the retrofits required by this Consent Order will be performed to the public and common use areas of the Non-surveyed Subject Properties, which include unit entrances and accessible routes. Such notice shall conform to Appendix C. The Defendants shall certify to the United States in writing that the notices have been distributed and the manner in which they were distributed within ten (10) days after such distribution.

## X. INSPECTIONS

### A. Neutral Inspector At Fully Surveyed Subject Properties

157. The Defendants shall enter into a contract with a neutral inspector approved by the United States ("Fully Surveyed Subject Properties Inspector") to conduct on-site inspections of the retrofits at the Fully Surveyed Subject Properties that have been performed under this Consent Order to determine whether the retrofits have been completed in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports at the Fully Surveyed Subject Properties. The Fully Surveyed Subject Properties Inspector shall have expertise in the Accessible Design Requirements of the FHA, and the accessibility

53

requirements of the Guidelines, the ADA and the ADA Standards, and may be the same person or persons identified as a "Properties Surveyor(s)" pursuant to paragraph 144 of this Order.

158.  An inspection of a Fully Surveyed Subject Property shall take place within thirty (30) days of the completion of all of the retrofits to units and common use areas at that property, or as soon thereafter as practicable.  The Defendants shall give the United States at least three (3) weeks notice of the inspection and shall give the United States an opportunity to have its representatives present for the inspection.

159.  The Fully Surveyed Subject Properties Inspector shall set out the results of each inspection of the Fully Surveyed Subject Property, including deficits if any, in writing and shall send that report to counsel for Defendants involved in the design and construction of that Fully Surveyed Subject Property, and counsel for the United States.[25]  If the inspection indicates that not all of the required retrofits have been made in accordance with the Remediation Protocol at locations identified in the United States' Expert Reports that apply to the Fully Surveyed Subject Property, the Defendants involved in the design and construction of the Fully Surveyed Subject Property shall correct any deficiencies within a reasonable period of time and shall pay for another inspection by the same Fully Surveyed Subject Properties Inspector to certify that the deficiencies have been corrected.  This process shall continue

---

[25]  For purposes of this Order, counsel for the United States is Chief, Housing and Civil Enforcement Section, Civil Rights Division, United States Department of Justice, 950 Pennsylvania Avenue, NW – G St. Bldg., Washington, D.C.  20530, Attn: *U.S.* v. *Murphy Development, LLC, et al.*, DJ# 175-71-481, or as otherwise directed by the United States.  All reports mentioned in this Consent Order shall be sent to that address or as directed in writing by the United States.  If a submission by facsimile is required, the submission shall be sent to (202) 514-1116, or as directed by the United States.

until the Fully Surveyed Subject Properties Inspector certifies that all of the necessary retrofits have been made. The Defendants involved in the design and construction of the Fully Surveyed Subject Property shall pay all of the Fully Surveyed Subject Properties Inspector's reasonable costs associated with these inspections of the Fully Surveyed Subject Property, and such payments shall be made without regard to the Fully Surveyed Subject Properties Inspector's findings. Upon reasonable notice to the Defendants, representatives of the United States shall be permitted to inspect the retrofits made by the Defendants in accordance with this Consent Order and the Fully Surveyed Subject Properties Inspector's inspection reports provided for in this Consent Order, to ensure compliance; provided, however, that the United States shall endeavor to minimize any inconvenience caused by such inspections.

**B. Neutral Inspector At Non-surveyed Subject Properties**

160. The Defendants involved in the design and construction of a Non-surveyed Subject Property shall enter into a contract with a neutral inspector approved by the United States ("Non-surveyed Properties Inspector") to conduct on-site inspections of the retrofits at the Non-surveyed Properties that have been performed under this Consent Order to determine whether the retrofits have been completed in accord with the specifications in this Consent Order. The Non-surveyed Properties Inspector shall have expertise in the Accessible Design Requirements of the FHA and the accessibility and adaptability requirements of the Guidelines, the ADA, the ADA Standards, and ANSI A117.1-1986.

161. An inspection of a Non-surveyed Subject Property shall take place within thirty (30) days of the completion of all of the retrofits to covered multifamily dwelling unit interiors and the public and common areas at that Non-surveyed Subject Property, or as soon thereafter

55

as practicable. The Defendants involved in the design and construction of that Non-surveyed Property shall give the United States at least three (3) weeks notice of the inspection and shall give the United States an opportunity to have its representatives present for the inspection.

162. The Non-surveyed Properties Inspector shall set out the results of each inspection of the Non-surveyed Subject Property, including deficits if any, in writing and shall send that report to counsel for the Defendants and counsel for the United States. If the inspection indicates that not all of the required retrofits agreed upon by the parties or ordered by the court have been made at the Non-surveyed Subject Property, the Defendants shall correct any deficiencies within a reasonable period of time and the Defendants shall pay for another inspection by the same Non-surveyed Properties Inspector to certify that the deficiencies have been corrected. This process shall continue until the Non-surveyed Properties Inspector certifies that all of the necessary retrofits have been made at each Non-surveyed Subject Property. The Defendants shall pay all of the Non-surveyed Properties Inspector's reasonable costs associated with these inspections of the Non-surveyed Subject Property, and such payments shall be made without regard to the Non-surveyed Properties Inspector's findings. Upon reasonable notice to the Defendants, representatives of the United States shall be permitted to inspect the retrofits made by the Defendants in accordance with this Consent Order and the Non-surveyed Properties Inspector's inspection reports provided for in this Consent Order, to ensure compliance; provided, however, that the United States shall endeavor to minimize any inconvenience caused by such inspections.

## XI. TRANSFER OF INTEREST IN SUBJECT PROPERTIES

163. The sale or transfer of ownership, in whole or in part, by an owner of a Fully Surveyed

56

Subject Property or Non-surveyed Subject Property shall not affect the continuing

obligation of the Defendants and Azalea Development, LLC, to retrofit the Fully Surveyed

Subject Property or survey and retrofit the Non-surveyed Subject Property as specified in

this Order. Should a Defendant or an entity related or affiliated to a Defendant decide to

sell or transfer any ownership of a Property, in whole or in part, or any portion thereof, prior

to the completion of the retrofits at a Fully Surveyed Subject Property or completion of the

surveys and retrofits at a Non-surveyed Subject Property specified in this Order and its

Appendices, that Defendant or entity will at least thirty (30) days prior to completion of the

sale or transfer: (a) provide to each prospective buyer written notice that the Property is

subject to this Order, including specifically the Defendants' obligation to complete required

surveys, retrofit work and inspections, along with a copy of this Order; and (b) provide to

the United States, by facsimile and first-class mail, written notice of the intent of a

Defendant or an entity related or affiliated to a Defendant to sell or transfer ownership,

along with a copy of the notice sent to each buyer, and each buyer's name, address and

telephone number.

## XII.  NO RAISING OF RENTS OR FEES

164.   The Defendants and Azalea Development, LLC, their agents and affiliated companies, may

not raise the rent or fees of any dwelling unit, or demand any deposit or other fee for a

dwelling unit at any Subject Property solely because of contemplated or completed retrofits

in a dwelling unit.

## XIII. NON-DISCRIMINATION IN FUTURE DESIGN AND CONSTRUCTION

165.   The Defendants and each of their officers, employees, shareholders, agents, successors and

assigns, and all other persons in active concert or participation with them, shall design and

construct all future covered multifamily dwellings to fully comply with the requirements of the Fair Housing Act, the Guidelines, the ADA, and the ADA Standards.

166. For the duration of this Order, the Defendants shall maintain, and provide to the United States, the following information and statements regarding any covered multifamily dwellings, not otherwise identified as Subject Properties, that are, developed, built, designed, constructed, or engineered in whole or in part, by any of them or by any entities in which they have a position of control as an officer, director, member, or manager, or have a ten-percent (10%) or larger ownership share:[26]

    a.    the name and address of the covered multifamily dwellings;

    b.    a description of the covered multifamily dwelling project and the individual units;

    c.    the name, address, and telephone number of the civil engineer(s) involved with the covered multifamily dwelling project;

    d.    a statement from all civil engineer(s) involved with the covered multifamily dwelling project acknowledging and describing his/her knowledge of and training in the requirements of the Fair Housing Act, the requirements of the ADA, and in the field of accessible site design and certifying that he/she has reviewed the engineering documents for the project and that, to the best of his/her knowledge after reasonable inquiry, the design specifications therein fully comply with the requirements of the Fair Housing Act, the Guidelines, the ADA, and the ADA Standards;

    e.    The name, address and telephone number of the architect(s) involved with the

---

[26] Defendants and Azalea Development, LLC, hereby represent that neither they, nor any entities in which any of them have a position of control as an officer, director, member, or manager, or have a ten-percent (10%) or larger ownership share, are engaged in the developing, building, designing, constructing, or engineering, in whole or in part, of any covered multifamily dwellings, not otherwise identified as Subject Properties.

covered multifamily dwelling project;

f.      a statement from all architect(s) involved with the covered multifamily dwelling project, acknowledging and describing his/her knowledge of and training in the requirements of the FHA, the requirements of the ADA, and in the field of accessible site and unit design and certifying that he/she has reviewed the architectural plans for the project and that, to the best of his/her knowledge after reasonable inquiry, the design specifications therein fully comply with the requirements of the Act, the Guidelines, the ADA, and the ADA Standards.

g.      If the engineering documents or architectural plans are revised, and the revisions could have any impact on the accessibility of the dwellings or project, each of the Defendants shall obtain, maintain, and provide to the United States upon request, a statement from the site engineer(s) or architect(s), who are employed or retained by any Defendant and are involved with the multifamily dwelling project, as applicable, that, to the best of his/her knowledge after reasonable inquiry, all specifications in the revised engineering documents or architectural plans, as pertinent, comply with the requirements of the Fair Housing Act, the Guidelines, the ADA, and the ADA Standards.

## XIV.  SETTLEMENT FUND AND PAYMENTS TO AGGRIEVED PERSONS

167.    Within sixty (60) days after the date of this Consent Order, the Defendants shall deposit in an interest-bearing account the total sum of twenty-five thousand dollars ($25,000.00) for the purpose of compensating any aggrieved persons who may have suffered as a result of the alleged discriminatory housing practices by the Defendants.  Every six months after the initial deposit, Defendants shall deposit an additional one hundred thousand dollars

($100,000) to the interest-bearing account, until the total deposits to the account equal three hundred fifty thousand dollars ($350,000.00). In addition to, and made at the same time as the biannual deposit, Defendants shall deposit into the same account the interest that would have accrued had the deposit been held in an interest-bearing account sixty (60) days after the entry of this Order. This money shall be referred to as the "Settlement Fund," and shall be for the purpose of compensating any aggrieved persons who may have suffered as a result of the alleged discriminatory housing practices by the Defendants.

168. Within sixty (60) days of the entry of this Order, the Defendants shall publish the Notice to Potential Victims of Alleged Housing Discrimination ("Notice") at Appendix B informing readers of the availability of compensatory funds. The Notice shall be no smaller than three columns by six inches and shall be published on three occasions in newspapers of general circulation serving each locality in which a Subject Property is located. The publication dates shall be separated from one another by twenty-one (21) days, and at least two of the publication dates shall be on a Sunday. Within ten (10) days of each publication date, the Defendants shall provide the newspaper containing the Notice to counsel for the United States.

169. Within sixty (60) days of the entry of this Order, the Defendants shall send a copy of the Notice to each of the following organizations:

   a.   Tennessee Fair Housing Council, 107 Music City Circle, Suite 318, Nashville, Tennessee 37214

   b.   City of Knoxville Fair Housing Program, 400 Main St., Suite 514, Knoxville, Tennessee 37902

   c.   Tennessee Human Rights Commission, 710 James Robertson Parkway, Suite 100,

Nashville, Tennessee  37243

d. Tennessee Protection and Advocacy, Inc., P.O Box 121257, Nashville, Tennessee 37212

e. Legal Aid Society of Middle Tennessee and the Cumberlands, 104 West 7th Street, Columbia, Tennessee  38401-3214

f. Legal Aid Society of Middle Tennessee and the Cumberlands, 120 Franklin Street, Clarksville, Tennessee  37040-3473

g. Legal Aid Society of Middle Tennessee and the Cumberlands, 300 Deaderick Street, Nashville, Tennessee  37201-1103

h. Legal Aid of East Tennessee, 744 McCallie Ave., Chattanooga, Tennessee  37403

i. Legal Aid of East Tennessee, 502 S. Gay St., Knoxville, Tennessee  37902

j. Legal Aid of East Tennessee, 1001 W. 2nd North Street, Morristown, Tennessee 37814

k. Tennessee Disability Coalition, 955 Woodland Street, Nashville, Tennessee  37206

l. Tri-State Resource and Advocacy Corp., 5708 Uptain Road, Suite 350, Chattanooga, Tennessee  37411

m. Disability Resource Center, 900 East Hill Avenue, Suite 120, Knoxville, Tennessee 37915

n. Center for Independent Living of Middle Tennessee, 955 Woodland Street, Nashville, Tennessee  37206

170. Within six (6) months of the entry of this Order, the Defendants shall send, by first-class mail, postage pre-paid, a copy of the Notice to each past or present tenant at the Subject Properties for whom they have records.  For past tenants, the Defendants will have complied

61

with the requirements of this paragraph by mailing such notice to the forwarding address provided to the owners or managers of the Subject Properties or their agents by the former tenant at the time the former tenant moved out. Within seven (7) months of entry of this Order, the Defendants shall provide to counsel for the United States proof that the Notices have been sent.

171. Allegedly aggrieved persons shall have twelve (12) months from the date of the entry of this Order to contact the United States. The United States shall investigate the claims of allegedly aggrieved persons and, within eighteen (18) months from the entry of this Order, shall make a preliminary determination of which persons are aggrieved and whether any amount of damages should be paid to each such person. The preliminary determinations of the appropriate amount of damages shall total no more than three hundred fifty thousand dollars ($350,000.00), and shall not include any interest that has accrued in the account. The United States will inform the Defendants, in writing, of its preliminary determinations, together with a copy of a sworn declaration from each allegedly aggrieved person setting forth the factual basis of the claim. The Defendants shall have ninety (90) days to review the declarations and provide to the United States any comments, documents or information that they believe may refute the claim.

172. Not later than ninety (90) days after receiving the comments, documents and information from the Defendants, the United States shall submit its final recommendations to the Court for approval, together with a copy of the declarations and any additional information submitted by Defendants. The final recommendations by the United States shall not total more than three hundred fifty thousand dollars ($350,000.00), and shall not include any interest that has accrued in the account. When the Court issues an order approving or

changing the United States' proposed distribution of funds for allegedly aggrieved persons, the Defendants, within ten (10) days of the Court's order, shall deliver to the United States checks payable to the allegedly aggrieved persons in the amounts approved by the Court, plus a proportionate share of the interest that has accrued in the Settlement Fund as of the day before the checks are sent to the United States. In no event shall the aggregate of all such checks exceed the sum of the Settlement Fund, including accrued interest. No allegedly aggrieved person shall be paid until he/she has executed and delivered to counsel for the United States the release at Appendix D.

173. In the event that less than the total amount in the fund including accrued interest is distributed to allegedly aggrieved persons, the remainder shall revert to the Defendants.

174. The Defendants shall permit the United States, upon reasonable notice, to review any records that may reasonably facilitate its determinations regarding the claims of alleged aggrieved persons.

175. Nothing in this Consent Order shall preclude the United States from making its own efforts to locate and provide notice to potential aggrieved persons.

## XV. PAYMENT TO THE UNITED STATES

176. Within sixty (60) days of the date of this order, the Defendants shall make a payment to the United States of seventy-five thousand dollars ($75,000.00) pursuant to 42 U.S.C. § 3614(d) and 42 U.S.C. § 12188(b)(2). Said sum shall be paid within sixty (60) days of the date of entry of this Order by submitting a check made payable to the "United States of America" to counsel for the United States.

## XVI. EDUCATIONAL PROGRAM

177. Within thirty (30) days of the entry of this Order, the Defendants and Azalea Development,

63

LLC, shall provide a copy of this Order to all their agents and employees involved in the design or construction of a Subject Property or any other covered multifamily dwelling property and secure the signed statement from each agent or employee acknowledging that he or she has received and read the Order, and has had an opportunity to have questions about the Order answered. This statement shall be substantially similar to the form of Appendix E.

178. During the term of this Order, within thirty (30) days after the date he or she commences an agency or employment relationship with a Defendant or Azalea Development, LLC, each new agent or employee involved in the design and construction of a Subject Property or any other covered multifamily dwelling property shall be given a copy of this Order and be required to sign the statement acknowledging that he or she has received and read the Order, and has had an opportunity to have questions about the Order answered. This statement shall be substantially similar to the form of Appendix E.

179. The Defendants and Azalea Development, LLC, shall also ensure that they, their employees, and their agents who have primary management authority over the design and/or construction of covered multifamily dwellings have a copy of, are familiar with, and personally review, the Fair Housing Accessibility Guidelines, 56 Fed. Reg. 9472 (1991) and the United States Department of Housing and Urban Development, Fair Housing Act Design Manual, A Manual to Assist Builders in Meeting the Accessibility Requirements of the Fair Housing Act, (August 1996, Rev. April 1998). The Defendants and Azalea Development, LLC, and all of their employees and agents whose duties, in whole or in part, involve the management, sale and/or rental of covered multifamily dwellings at issue in this case, shall be informed of those portions of the Fair Housing Act that relate to accessibility

64

requirements, reasonable accommodations and reasonable modifications.

180.  Within ninety (90) days of the date of entry of this Consent Order, the Defendants and

Azalea Development, LLC, and all their employees and agents whose duties, in whole or in

part, either involve or will involve primary management authority over the development or

involve or will involve the design and/or construction of covered multifamily dwellings,

shall undergo training on the design and construction requirements of the Fair Housing Act

and the ADA, unless they have already had similar training within the last four years that is

retroactively approved by the United States.[27]  The training shall be conducted by a qualified

individual approved by the Department of Justice, and any expenses associated with this

training shall be borne by the Defendants or Azalea Development, LLC.  The Defendants

and Azalea Development, LLC, shall provide to the United States, within thirty (30) days

after the training, the name(s), address(es) and telephone number(s) of the trainer(s); copies

of the training outlines and any materials distributed by the trainers; and certifications

executed by all the Defendants and Azalea Development, LLC, and their covered employees

and agents, confirming their attendance, in a form substantially equivalent to Appendix E.

## XVII.  NOTICE OF DEFENDANTS' NON-DISCRIMINATION POLICY

181.  Within ten (10) days of the date of entry of this Consent Order, the Defendants and any

entity related or affiliated to a Defendant and Azalea Development, LLC, shall post and

prominently display in the sales or rental offices of all covered multifamily dwellings owned

or operated by them a sign no smaller than 10 by 14 inches indicating that all dwellings are

available for rental or sale on a nondiscriminatory basis.  A poster that comports with 24

---

[27]  The educational program provided to employees not engaged in design and/or construction, such as employees whose primary duties involve financial matters, may focus on the portions of the law that relate generally to accessibility requirements as opposed to technical design and construction requirements.

C.F.R. Part 110 will satisfy this requirement.

182. For the duration of this Consent Order, in all future advertising in newspapers, electronic media, pamphlets, brochures and other promotional literature regarding the existing complexes or any new complexes that any Defendant may develop or construct, the Defendant shall place, in a conspicuous location, a statement that the dwelling units include features for persons with disabilities required by the federal Fair Housing Act.

## XVIII. NOTIFICATION AND DOCUMENT RETENTION REQUIREMENTS

183. In addition to any other reporting required herein, within one hundred eighty (180) days after the date of entry of this Consent Order, the Defendants and Azalea Development, LLC, shall submit to the United States an initial report containing the reporting required by paragraph 166 on any future design and construction by the Defendants or Azalea Development, LLC, and containing the signed statements of the Defendants' and Azalea Development, LLC's employees and agents as required by paragraph 177, and the signed statements and information regarding Defendants' and Azalea Development, LLC's employees and agents who have completed the training program specified in paragraph 180 of this Consent Order. Thereafter during the term of this Order, the Defendants and Azalea Development, LLC, shall, on the anniversary of the entry of this Order, submit to the United States a compliance report detailing the Defendants' and Azalea Development, LLC's compliance with this order including details on the retrofitting and inspections of retrofits at the Fully Surveyed Subject Properties, the surveying, retrofitting and inspections of the retrofitting at the Non-surveyed Subject Properties, the reporting required by paragraph 166 on any future design and construction, and the signed statements of their new employees and agents that, in accordance with paragraph 178 of this Consent Order, they have received

and read this Consent Order, and had an opportunity to have questions about this Consent Order answered, except that the last compliance report shall be due sixty (60) days prior to the anniversary.

184. For the duration of this Consent Order, the Defendants and Azalea Development, LLC, shall advise the United States in writing within fifteen (15) days of receipt of any written administrative or legal fair housing complaint against any property owned or managed by them, or against any employees or agents of the Defendants or Azalea Development, LLC, working at or for any such property, regarding discrimination on the basis of disability in housing. Upon reasonable notice, the Defendants and Azalea Development, LLC, shall also provide the United States all information it may request concerning any such complaint. The Defendants and Azalea Development, LLC, shall also advise counsel for the United States, in writing, within fifteen (15) days of the resolution of any complaint.

185. For the term of this Consent Order, the Defendants and Azalea Development, LLC, are required to preserve all records related to this Consent Order, related to the Subject Properties, and related to any other covered multifamily dwellings designed, constructed, owned, operated, or acquired by them during the duration of this Consent Decree. Upon reasonable notice to the Defendants or Azalea Development, LLC, representatives of the United States shall be permitted to inspect and copy any records of the Defendants or Azalea Development, LLC, or inspect any developments or residential units under the control of the Defendants or Azalea Development, LLC, bearing on compliance with this Consent Order at any and all reasonable times, provided, however, that the United States shall endeavor to minimize any inconvenience to the Defendants or Azalea Development, LLC, from such inspections.

## XIX.  DURATION OF CONSENT ORDER AND TERMINATION OF LEGAL ACTION

186.    This Consent Order shall remain in effect as against the Defendants for five (5) years after the date of its entry, or six months after the completion of Defendants' obligations pursuant to Sections III, VI, VII, and X of this Order, whichever is later.  This Consent Order shall remain in effect as against Azalea Development, LLC, for five (5) years after the date of its entry, or six months after the completion of Azalea Development, LLC,'s obligations pursuant to Sections III, VI, VII, and X of this Order, whichever is later.

187.    The Court shall retain jurisdiction for the duration of this Consent Order to enforce the terms of this Consent Order, at which time the case shall be dismissed with prejudice.  The United States may move the Court to extend the duration of this Consent Order in the interests of justice.

188.    The United States and the Defendants and Azalea Development, LLC, shall endeavor, in good faith, to resolve informally any differences regarding interpretation of and compliance with this Consent Order prior to bringing such matters to the Court for resolution.  However, in the event of a failure by the Defendants or Azalea Development, LLC, to perform, in a timely manner, any act required by this Consent Order or otherwise for their failure to act in conformance with any provision thereof, the United States may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and reasonable attorney's fees which may have been occasioned by the violation or failure to perform.

## XX.  TIME FOR PERFORMANCE

189.    Any time limits for performance imposed by this Consent Order may be extended by the

mutual written agreement of the United States and the relevant Defendants or Azalea

Development, LLC.

## XXI.  COSTS OF LITIGATION

190.    Each party to this litigation will bear its own costs and attorney's fees associated with this

litigation.

SO ORDERED this 30th day of March,  2010.


_____
UNITED STATES DISTRICT COURT JUDGE

The undersigned apply for and consent to the entry of this Order:


*For Plaintiff United States*

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

EDWARD M. YARBROUGH
United States Attorney
Middle District of Tennessee


/s/ M. Elizabeth Parr
/s/ Robin L. Dull
STEVEN H. ROSENBAUM, Chief
MICHAEL S. MAURER, Deputy Chief
M. ELIZABETH PARR, Trial Attorney
ROBIN L. DULL, Trial Attorney
United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
Tel: (202) 514-4713
Fax: (202) 514-1116

/s/ Ellen Bowden McIntyre
MARK H. WILDASIN, Assistant United States Attorney
ELLEN BOWDEN MCINTYRE, Assistant United States Attorney
Office of the United States Attorney
Middle District of Tennessee
110 Ninth Avenue South, Suite A-961
Nashville, TN 37203
Tel.: (615) 736-5151
Fax: (615) 736-5323


*For Defendants (except Azalea Development, LLC):*


/s/ Theresa L. Kitay
THERESA L. KITAY
Attorney at Law
578 Washington Blvd.
Suite 836
Marina del Ray, CA 90292
Tel: (310) 578-9134
Fax (770) 454-0126


*For Defendant Azalea Development, LLC:*


/s/ John E. Winters
JOHN E. WINTERS
Kramer Rayson LLP
P. O. Box 629
Knoxville, TN 37901-0629
Tel: (865) 525-5134
Fax: (865)521-5857

70

## APPENDIX A

## NOTICE TO TENANTS

Dear Tenant:

This is to advise you that, as a result of a settlement in a case brought by the United States against the owners of this apartment complex, we have agreed to retrofit the ground floor units at _____ [Subject Property] to provide greater accessibility for people with disabilities. Your unit qualifies for retrofitting to provide greater accessibility.

Although your apartment unit will be retrofitted automatically after your tenancy ends, we want you to know that you may request to have your apartment modified now at no cost to you. If the work requested will require your displacement from your apartment for a period of more than 24 consecutive hours, we will provide you with another unit in this development, comparable alternative living arrangements, or, if no comparable alternative living arrangements are available, a cash payment equal to the applicable government per diem rate for food and lodging for your local area during that time. In scheduling when the repairs will take place, we will take into account your preferences and convenience.

You should be aware that this work must be completed within the next ___ [years/months], regardless of your intention to stay in your apartment for a longer duration. Please let us know if you are interested in having the work done now and we will provide you with additional information.

The Management

## APPENDIX B

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MURPHY DEVELOPMENT, LLC; et al, | )     Civil Case No. 3:08-cv-960 |
| | )     JUDGE ECHOLS |
| Defendants / Third-Party | )     MAGISTRATE JUDGE KNOWLES |
| Plaintiffs, | ) |

## NOTICE TO POTENTIAL VICTIMS OF ALLEGED DISCRIMINATION AGAINST PERSONS WITH DISABILITIES AT MURPHY DEVELOPMENT APARTMENT COMPLEXES

On _____, 2010, the United States District Court for the Middle District of Tennessee entered a Consent Order resolving a housing discrimination lawsuit brought by the United States against the Murphy Development, LLC, and related apartment complex owners at twenty-one apartment complexes throughout Tennessee. The United States alleges that the ground floor units and many common use areas (for example, rental offices, routes to amenities, etc.) are not accessible to persons with physical disabilities. As part of the consent order, the defendants have agreed to retrofits of the ground floor units and common use areas to comply with the Fair Housing Act and the Americans with Disabilities Act at the following apartment complexes:

| | |
|---|---|
| Ashton View Apartments | Morristown, Tennessee |
| Beason Well Apartments | Kingsport, Tennessee |
| Cassell Ridge Apartments | Knoxville, Tennessee |
| Cassell View Apartments | Knoxville, Tennessee |
| Dunhill Apartments | Knoxville, Tennessee |
| Lyon's Den Apartments | Knoxville, Tennessee |
| River View Park Apartments | Knoxville, Tennessee |
| Spring Branch Apartments | Madison, Tennessee |
| Sutherland Park Apartments | Knoxville, Tennessee |
| Sutherland View Apartments | Knoxville, Tennessee |
| Swiss View Apartments | Nashville, Tennessee |
| The Highlands Apartments | Chattanooga, Tennessee |
| West Vista Ridge Apartments | Knoxville, Tennessee |
| White Oak Apartments | Jamestown, Tennessee |
| 17th Street Apartments | Springfield, Tennessee |
| Forest View Apartments | Mt. Juliet, Tennessee |
| Lakeside Apartments | Hermitage, Tennessee |

72

|                        |                          |
|------------------------|--------------------------|
| Meadowcreek Apartments | Goodlettsville, Tennessee |
| Miller Town Apartments | Clarksville, Tennessee   |
| Stonebridge Apartments | Columbia, Tennessee      |
| Swiss Ridge Apartments | Nashville, Tennessee     |

The consent order also establishes a Settlement Fund to compensate persons who have been harmed as a result of this alleged discrimination at any of the above-named complexes. You or members of your family may be qualified to recover from the Settlement Fund if you or members of your family allege that you:

- were discouraged from living at any of the above-named complexes because of the lack of accessible features of the apartment or the complex;

- rented an apartment but were unable to use, or had difficulties using portions of your apartment or the complex because they were not accessible (including the inability to have visitors who have disabilities);

- paid to have any portion of your apartment or the complex modified to be more accessible;

- were not informed about, or offered, all available apartment units because of your disability or the disability of someone who would be living with you; or

- requested and were denied a reasonable accommodation for your disability or the disability of someone who was living with you.

*If you believe you have been harmed because of your disability at any of the above-named apartment complexes, or if you have information about someone else who may have been harmed, please contact the United States Department of Justice at:*

1-800-896-7743, ext. 2

*You also may write to United States Department of Justice, Civil Rights Division, Housing and Civil Enforcement Section, 950 Pennsylvania Avenue, N.W. – G St., Washington, DC, 20530, Att: DJ 175-71-481*

**\*\*\* You must call or write no later than 365 days from the date of entry of the Consent Order] to be eligible for compensation, and your telephone message or letter must include your name, address, and, if possible, at least two telephone numbers where you may be reached.**

# APPENDIX C

## NOTICE OF RETROFITS TO PUBLIC AND COMMON USE
## AREAS AT [SUBJECT PROPERTY]

The federal Fair Housing Act requires that the public and common use areas at complexes such as [SUBJECT PROPERTY] have certain features of physical accessibility for persons with disabilities.

It has been brought to our attention that certain features of the public and common areas of [SUBJECT PROPERTY] can be modified to provide greater accessibility for persons with disabilities, consistent with the accessibility requirements of the federal Fair Housing Act. We welcome persons with disabilities as homeowners, residents and guests at [SUBJECT PROPERTY]. We are writing this notice to let you know that beginning on _____, contractors will be coming onto the property to begin the process of modifying certain aspects of the public and common use areas. We expect the process to last approximately _____ weeks, weather permitting.

Generally, the workers will modify or "retrofit" certain sidewalks, install curb cuts and ramps or modify existing ones, and eliminate some of the steps along certain pathways to certain ground-floor units (including the step into some units). They will also be making some modifications to the mailboxes, and swimming pool, as well as to other areas, to make them more accessible to persons with disabilities. We apologize for any inconveniences you may incur as a result of this work.

If you have any questions regarding these modifications, please contact us at _____.

## APPENDIX D

### RELEASE OF ALL CLAIMS

In consideration of and contingent upon the payment of the sum of dollars ($ ), pursuant to the Consent Order entered in *United States* v. *Murphy Development, LLC, et al.*, No. 08-cv-960 (M.D. Tenn.), by the United States District Court, Middle District of Tennessee, I hereby release and forever discharge the Defendants named in this action, and each of their officers, employees, shareholders, agents, successors and assigns, and all other persons in active concert or participation with them, from any and all liability for any claims, legal or equitable, I may have against them arising out of the issues alleged in this action as of the date of the entry of that Consent Order. I fully acknowledge and agree that this release of the Defendants will be binding on my heirs, representatives, executors, successors, administrators, and assigns. I hereby acknowledge that I have read and understand this release and have executed it voluntarily and with full knowledge of its legal consequences.

_____
(Signature)

NAME: _____

ADDRESS: _____

_____

_____

DATE: _____

## APPENDIX E

### CERTIFICATION OF FAIR HOUSING TRAINING

On _____, I attended training on the federal Fair Housing Act, including its requirements concerning physical accessibility for people with disabilities.  I have had all of my questions concerning the Fair Housing Act answered to my satisfaction.


_____
(Signature)


_____
(Print name)


_____
(Position)


_____
(Date)